UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Chapter 7 (Involuntary) |
| WORKCENTRIC LLC, | : | Case No. 24-10040-MFW |
| Alleged Debtor. | : | |

**DECLARATION OF JASON MARGOLIN**

I, Jason Margolin, hereby declare as follows:

1. I am over 21 years of age and competent to make this declaration. The statements in this declaration are based on my personal knowledge. If I were called upon to testify, I could and would competently testify to the facts set forth herein.

2. I am a partner with the law firm of Akerman LLP ("Akerman"), attorneys for SUNZ Insurance Solutions, LLC ("Sunz").

3. I am a member of the Florida Bar and am admitted *pro hac vice* to represent Sunz in this action.

4. I submit this declaration in support of WorkCentric LLC ("WorkCentric") and Sunz's Joint Motion for Summary Judgment ("Motion for Summary Judgment") against the involuntary petition filed by Pipe Technologies, Inc. ("Pipe").[1]

5. Sunz understands the Manager served its *Requests of WorkCentric 1, LLC, as sole manager of WorkCentric, LLC, on its own behalf and on behalf of WorkCentric, LLC for Production of Documents to Pipe Technologies, Inc.*, on or about February 9, 2024. Attached as **Exhibit 1** is a copy of those Requests.

[1] All capitalized terms not defined herein shall have the meaning ascribed in the Motion for Summary Judgment.

6. Sunz served its *Requests of Sunz Insurance Solutions, LLC for Production of Documents to Pipe Technologies, Inc.*, on March 4, 2024. (Doc. 78). Attached as **Exhibit 2** is a copy of those Requests.

7. Sunz, Manager, and Pipe conferred, through counsel, multiple times in mid-May 2024 to discuss the requests, responses and objections. The parties negotiated a protective order and confidentiality agreement, as a condition precedent to exchanging documents. And the parties agreed, it would make sense for the parties to discuss the majority of Pipe's responses and objections, after Sunz and Manager could review the documents that Pipe was willing to produce. A true and correct copy of the parties conferral email ending May 17, 2024 confirming same, is attached as **Exhibit 3**.

8. On June 18, 2024, Pipe made its initial production of documents.

9. On August 19, 2024, I sent Pipe's counsel correspondence asking Pipe to produce (i) complete copies of the two partial documents Pipe identified as the "February 1, 2021 Pipe Agreement" and "November 21, 2021 Pipe Agreement" (the "Pipe Agreements") as Exhibits A and B to the Declaration of Lucus Voiles (Bankr. Dkt. 56 (sealed)); and (ii) proof of payments made by Pipe to WorkCentric and any payments by WorkCentric back to Pipe. Attached as **Exhibit 4**, is a true and correct copy of the correspondence.

10. Pipe has still not produced signed or complete versions of the Pipe Agreements. Pipe has still not produced proof of payments made by Pipe to WorkCentric or any payments made by WorkCentric to Pipe.

11. On August 26, 2024, Pipe made a supplemental production of documents.

12. After viewing both the initial production and supplemental production by Pipe, on August 27, 2024, I sent Pipe's counsel correspondence asking Pipe to produce documents showing

any transfer of money between Pipe and WorkCentric. Attached as **Exhibit 5**, is a true and correct copy of the correspondence with its enclosures (enclosures Pipe had designated Confidential and bates-stamped Pipe_00000738, Pipe_00000742, and Pipe_00000747).

13. Pipe has still failed to produce:

- Any documents showing any transfer of money between Pipe and WorkCentric;
- A single one of the 64 customer contracts allegedly purchased by Pipe;
- Any agreement by Pipe to purchase any specific customer contract;
- Any proof of the amounts and reason that WorkCentric owed Pipe anything for any of the purchased contracts;
- Any documents showing that Pipe loaned or transferred funds to WorkCentric;
- Any history of transactions between WorkCentric and Pipe showing debits and credits of amounts owed;
- Any calculation of how Pipe determined the amount of the claim it asserts in the Involuntary Petition;
- Any documents evidencing any repayments on the purported debt to Pipe, even though Pipe claims such repayments have occurred; or
- Any documentation showing any consideration that WorkCentric received for the Pipe Forbearances, despite discovery requests seeking same.

14. Pipe produced bank statements showing a payment to The Immediate Company, not WorkCentric.

15. Pipe's production shows that while Sunz was attempting to preserve the value of WorkCentric, unbeknownst to Sunz, Pipe was secretly assisting Docks Sutherland ("Sutherland") to thwart those efforts. Attached as **Exhibit 6**, is a true and correct copy of the text message stream

between Sutherland and Pipe's CEO, Lucus Voiles ("Voiles"), which was produced by Pipe in response to requests for communications between Sutherland and Pipe.

16. Exhibit 6 shows that on November 2, 2023, Sutherland texted Voiles about locking the QuickBooks of WorkCentric, at the same time that the collateral agent, and Altschuler, were accessing it to aid in the assignment of contracts.

17. Exhibit 6 also shows that Voiles, who was a former Intuit executive[2], directly called Intuit's head of risk management, Matthew Allan, to ask him to lock WorkCentric's account.

18. Pipe also produced correspondence it sent to Sutherland and his counsel on October 23, 2024 enclosing a draft fifth forbearance agreement and side agreement. Attached as **Exhibit 7**, is a true and correct copy of the correspondence with its enclosed draft agreements, bates-stamped Pipe_00000282-292 and designated as Confidential by Pipe. Pipe has not produced (and Sunz is not aware of) any evidence Pipe sent these drafts to any of WorkCentric's officers at that time. It does not appear the draft fifth forbearance agreement or side agreement were ever signed.

19. Pipe also produced a "Letter Agreement re: Pipe Agreement" dated March 3, 2022, bates-stamped Pipe_00001190-1193 and designated Confidential by Pipe, which is attached as **Exhibit 8**. Exhibit 8 appears to be signed by "Docks Sutherland" as "Member" of WorkCentric. Although an ultimate owner at that time, there is no evidence Docks Sutherland was ever a "member" of WorkCentric. Exhibit 8 also contains an Exhibit A that is incomplete. Pipe has not produced a complete copy or any evidence this document was ever shown to any officer of WorkCentric.

20. Attached as **Exhibit 9** is a true and correct copy of an email chain dated November 13-14, 2023, produced by Pipe, bates-stamped Pipe_0000388 and designated as Confidential by

[2] Bankr. Dkt. 56, ¶ 4. Upon information and belief, Voiles was previously CEO and President of QuickBooks Capital.

Pipe in the course of this Involuntary Case, which evidences that, prior to filing the Involuntary Petition, Pipe was in direct contact with Martin Seidel of Holland & Knight, who at the time of such email was WorkCentric's counsel and WorkCentric's management's counsel.

21. Attached as **Exhibit 10** is a true and correct copy of an Affidavit filed by David Harvey ("Harvey") in pending litigation in the Circuit Court of Montgomery County, Maryland. The Affidavit states that Harvey is a Manager of WC TopCo since at least 2021 when it acquired WorkCentric (¶2), and that WorkCentric "collected a percentage of the premiums paid by its clients and contributed them to a loss fund account that Sunz maintains on behalf of the WorkCentric program." (¶10).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 22, 2024.

Jason Margolin

# EXHIBIT 1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| WORKCENTRIC, LLC, | Case No. 24-10040 (MFW) |
| Alleged Debtor. | **Related Docket Nos. 1, 16** |

**REQUESTS OF WORKCENTRIC I, LLC, AS SOLE MANAGER OF WORKCENTRIC, LLC, ON ITS OWN BEHALF AND ON BEHALF OF WORKCENTRIC, LLC, FOR PRODUCTION OF DOCUMENTS TO PIPE TECHNOLOGIES, INC.**

PLEASE TAKE NOTICE that, under Rules 26 and 34 of the Federal Rules of Civil Procedure (the "**Federal Rules**"), Rules 7026 and 7034 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), made applicable to the Involuntary Petition (as defined herein) by Bankruptcy Rule 9014, and Rules 7026-1 to 7026-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), counsel for WorkCentric I, LLC, as sole manager of the Alleged Debtor (as defined herein), by and through its undersigned counsel, requests that Pipe Technologies, Inc., in the above-captioned involuntary bankruptcy case respond to the following requests for inspection any documents called for by the following requests for production at the offices of Chipman Brown Cicero & Cole, LLP at Hercules Plaza, Suite 5400, 1313 Market Street, Wilmington, Delaware 19899-1709 (Attn: Mark L. Desgrosseilliers, Esq.) on or before March 10, 2024

These requests for production are subject to the Definitions and Instructions set forth below.

## DEFINITIONS

For the purposes of these document requests (collectively, the "**Requests**"), the following definitions apply:

A. "Alleged Debtor" means Workcentric, LLC, including its subsidiaries, divisions, predecessors and successors in interest, affiliates, parents, and each of its employees, agents, officers, directors, representatives, consultants, accountants, and attorneys, including any person who served in any of these capacities during any relevant period.

B. "Bankruptcy Case" means the above-captioned involuntary case filed against the Alleged Debtor under Chapter 7 of the Bankruptcy Code.

C. "Bankruptcy Code," whether capitalized or not, means Title 11 of the United States Code.

D. "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

E. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

F. "Communication" means the transmission of information in any form, including without limitation, written, oral, or electronic transmissions.

G. "Document" bears the broadest possible meaning ascribed to it in Federal Rule 34(a), which states "any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form," and refers to any document now or at any time in Your possession, custody, or control. "Document" always includes ESI and Communications.

H. "ESI" means Electronically Stored Information and bears the broadest possible meaning ascribed to it in Federal Rules 26(a)(1) and 34(a).

I. "Federal Rules" means the Federal Rules of Civil Procedure.

J. "Involuntary Petition" means the Involuntary Petition Against a Non-Individual (Docket No. 1), filed by You against the Alleged Debtor.

K. "Local Rules" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

L. "Motion to Dismiss" means that Motion to Dismiss (Docket No. 16) filed by WorkCentric 1 in the Bankruptcy Case.

M. "Person" means any individual, entity, corporation, partnership, unincorporated association, limited liability company, trust, firm, cooperative, fictitious business name, or government agency, as well as any agent, representative, employee, or attorney of each.

N. "WorkCentric 1" means WorkCentric 1, LLC.

O. "WorkCentric Entities" means (i) Embraceor, LLC, (ii) WorkCentric 2, LLC, (iii) WorkCentric 3, LLC, (iv) WC TopCo, LLC, and (v) WC Container, LLC, individually and jointly.

P. "You" and "Your" means Pipe Technologies, Inc., including its subsidiaries, divisions, predecessors and successors in interest, affiliates, parents, and each of its employees, agents, officers, directors, representatives, consultants, accountants, and attorneys, including any person who served in any of these capacities during any relevant period.

Q. "Regarding," "Concerning," "Relate," "Relating to," or "Related to" means consisting of, referring to, describing, reflecting, or being in any way logically or factually connected with the matter discussed.

R. Capitalized terms defined in the Involuntary Petition or the Motion to Dismiss and used but not otherwise defined herein shall have the meanings ascribed to such terms in the Involuntary Petition or the Motion to Dismiss.

S. Any other term used but not otherwise defined herein shall have the meaning given such term by the Bankruptcy Code, the Bankruptcy Rules, the Federal Rules, the Local Rules, or common usage unless otherwise required by the context.

## INSTRUCTIONS

The following instructions apply to these Requests:

1. You are requested to produce all Documents and information that are in the possession, custody, or control of You or any of Your employees, agents, representatives, attorneys, investigators, or any other person acting or purporting to act on Your behalf. If a Document is no longer in Your possession, custody, or control, describe the Document and identify who has custody of the Document.

2. Documents to be produced include, without limitation, any responsive Document that was or is prepared, kept, or maintained for the personal use, in the personal files, or as the personal property of any representative of the Persons responding hereto.

3. All Documents are to be produced as kept in the usual course of business with any identifying labels, file markings, or similar identifying features, or shall be organized and labeled to correspond to the categories requested herein.

4. Documents constituting ESI, other than Excel files, must be produced in .tiff format with corresponding load files containing the document's text and all available metadata. Excel files shall be produced in their native format, .xls or .xlsx. ESI shall be produced on appropriate

electronic media, by file transfer protocol, or by other production agreed to in writing by the parties.

5. A Request for any Document shall be deemed to include a request for all actual, proposed, or contemplated envelopes, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the Document, in addition to the Document itself.

6. A Request for any Document shall be deemed to include a request for all actual, proposed, or contemplated drafts or mark-ups thereof; revisions, modifications, or amendments thereto; and non-identical copies thereof, in addition to the Document itself.

7. The fact that a Document is produced by another party or non-party does not relieve You of the obligation to produce its copy of the same Document, even if the two Documents are identical.

8. All information is to be produced with a Bates number on each page, regardless of the form of production.

9. If you are unable to answer any Request in full, after exercising due diligence to secure the requested information, so state, and explain why the Request cannot be answered in full.

10. **Databases**. You shall produce responsive databases as databases, or in a format that may be loaded into a database. Specifically, for responsive databases, you shall provide all tables, table schemas, relationships, and data contained therein in a manner that would enable the recreation of said structures and data in WorkCentric 1's own environment. As you identify databases or portions of databases that are discoverable, you shall inform WorkCentric 1 that such a database has been identified before any conversion of the database is prepared so that the parties can meet and confer to discuss production details.

11. **<u>Hardcopy Documents</u>**. You shall produce responsive hardcopy Documents in single-page TIFF image format. Additionally, OCR text shall be delivered on a document level, representing the textual content of hardcopy Documents. In addition to the single-page TIFF images and document-level text files, you shall provide load files linking the TIFFs with their associated text file such that the document productions shall be loadable into document management software such as Relativity, or other similar programs.

12. **<u>Video and Audio Recordings and Analogous Media</u>**. You shall produce such responsive media in a duplicate copy.

13. All electronic Documents and Communications shall include the metadata described in **<u>Exhibit A</u>**.

14. If any Document or Communication, or any portion of a Document or Communication, is withheld under a claim of privilege or otherwise claimed to be protected against production, for each such Document or Communication state the following in a manner sufficient to allow the Court to rule upon the applicability of the claimed protection:

a. The nature of the privilege(s) or other protection claimed;

b. The legal and factual basis for the privilege(s) or other protection claimed;

c. The type of Document (e.g., letter, memorandum, handwritten notes);

d. A description of the subject matter of the Document, including identification of any attachments or appendices;

e. The date of the Document;

f. the paragraph of this Request to which the Document is responsive;

g. The name of the author(s), addressee(s), and all recipients of the Document and, where not apparent, the relationship of the author(s), addressee(s), and recipients to each other; and

h. In the case of Documents Concerning a meeting or conversation, identify all participants in the meeting or conversation.

A log containing such information concerning any withheld Documents or Communications shall be produced to WorkCentric1 no later than March 10, 2024, or a date otherwise agreed upon by the parties, at the offices of Chipman Brown Cicero & Cole, LLP at Hercules Plaza, Suite 5400, 1313 Market Street, Wilmington, Delaware 19899-1709 (Attn: Mark L. Desgrosseilliers, Esq).

15. The following rules of construction apply to all Requests:

a. All/Any/Each: The terms "all," "any," and "each" shall each be construed as encompassing any and all.

b. And: The connective "and" shall be construed to be conjunctive and so to mean when both or all of the conjunctive parts are satisfied or true.

c. Or: The connective "or" shall be construed to be disjunctive, not exclusive, and so to mean when any or all of the parts are satisfied or true.

d. Number: The use of the singular form of any word includes the plural and vice versa.

e. Gender: The use of one gender shall include the other.

f. Verb Tense: The use of a verb tense shall be construed as the use of the verb in the past or present tense, whenever necessary to bring within the scope of the request for admission all information or documents that might otherwise be construed as outside its scope.

g. Concerning and including. As used herein, the term "concerning" includes regarding, referring to, relating to, reflecting or reflecting upon, mirroring, addressing, discussing, forming the basis of, discussing, analyzing, supporting, constituting, comprising, containing, evidencing, setting forth, showing, disclosing, embodying in, forming the basis of, in connection with, commenting on, responding to, demonstrating, declaring, describing, analyzing, explaining, summarizing, mentioning, evidencing, or reflecting any event, act, or occurrence. As used herein, the term "including" means including, without limitation.

16. If you claim not to understand all or part of any Request, definition, or instruction, please advise WorkCentric 1's counsel immediately so that any lack of understanding may promptly be corrected.

17. The Documents requested include all attachments and enclosures. If any portion of a Document is responsive to a request, produce the entire document, including all attachments,

enclosures, "post-it"-type notes, and any other matter physically attached to the document, whether by paper clip or any other manner. If Documents responsive to these Requests are normally kept in a file or folder, also produce that file or folder with any labels attached thereto and indicate the company, division, department, or individual from whose files the document is being produced. If responsive Documents are segregated or separated from other documents, whether by inclusion in binders, files, sub-files, or by use of dividers, tabs or any other method, produce such Documents in that form.

18. If You are aware of Documents responsive to any Request that are not available to You or subject to Your reasonable access or control, identify to WorkCentric 1's counsel any information You may have concerning the location and possessor of such documents. If the addresses and telephone numbers of an individual or source identified in such response is available, please provide that contact information.

19. If any Document that forms a part of or the entire basis for any response to any Request has been destroyed or lost, for each such Document state when it was destroyed or lost, identify the Person who destroyed or lost the Document and the Person who directed that it be destroyed. In addition, detail the reasons for the destruction, describe the nature of the Document, identify the Person(s) who created, sent, and received the Document, state the date of the Document, and state in as much detail as possible the contents of the Document.

20. The Requests shall be deemed continuing and the responding party and any present or former affiliate or representative of the party responding hereto are required to supplement their production of documents as required by Rule 26(e) of the Federal Rules of Civil Procedure.

21. Although some of the Requests may overlap with other Requests, no Request should be read as limiting any other Request.

22. If a Document cannot be produced in full, produce it to the extent possible, identify the portion that cannot be produced, and specify the reasons for your inability to produce the remainder.

23. WorkCentric 1 reserves the right to amend, supplement, or modify these Requests.

24. Unless otherwise stated, each request seeks Documents created, edited, or accessed from March 1, 2023, until the date of this Request.

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

1. All contracts, including, but not limited to, purchase agreements relating to the Alleged Debtor.

**RESPONSE:**

2. All contracts, including, but not limited to, purchase agreements relating to the WorkCentric Entities.

**RESPONSE:**

3. All Documents reflecting amounts due from the Alleged Debtor to You.

**RESPONSE:**

4. All Documents reflecting defaults by the Alleged Debtor.

**RESPONSE:**

5. All Documents supporting Your decision to file the Involuntary Petition, including but not limited to all Documents supporting Your contention that the Alleged Debtor is insolvent.

**RESPONSE:**

6. All Documents supporting the claim You assert against the Alleged Debtor, including but not limited to any contract, note, or other agreement demonstrating this claim.

**RESPONSE:**

7. All Communications between You and the Alleged Debtor regarding any money you claim the Debtor owes You, including but not limited to any attempts to collect the money and any payments You received as part of the alleged debt**.**

**RESPONSE:**

8. All Documents concerning any payments You received from the Alleged Debtor, including but not limited to financial records demonstrating the payment and all Documents demonstrating the basis for the payment.

**RESPONSE:**

9. All documents regarding any payments You made to the Alleged Debtor, including but not limited to financial records demonstrating the payment and all Documents demonstrating the basis for the payment.

**RESPONSE:**

10. All Communications between You and Docks Sutherland regarding the Alleged Debtor and/or the WorkCentric Entities.

**RESPONSE:**

11. All Communications between You and David Harvey regarding the Alleged Debtor and/or the WorkCentric Entities.

**RESPONSE:**

12. All Communications between You and Sheldon Altschuler regarding the Alleged Debtor and/or the WorkCentric Entities.

**RESPONSE:**

13. All Communications between You and Holland & Knight LLP regarding the Alleged Debtor or any claim You have against the Debtor and/or the WorkCentric Entities.

**RESPONSE:**

14. All Documents and Communications concerning or relating to due diligence conducted by Pipe on the Alleged Debtor prior to filing the Involuntary Petition.

**RESPONSE:**

15. All Documents and Communications concerning or relating to any guarantee of the debt You allege is owed by the Alleged Debtor, including but not limited to any guarantee by any of the WorkCentric Entities.

**RESPONSE:**

16. All Documents and Communications concerning or relating to any attempt by Pipe to collect any obligation asserted against the Alleged Debtor, including from the Alleged Debtor or any third party, including but not limited to any of the WorkCentric Entities.

**RESPONSE:**

17. All Documents that You intend to use in any way at any deposition, hearing, or trial in connection with the Involuntary Petition or the Motion to Dismiss or in any filings with the Court (whether admissible or demonstrative evidence), including but not limited to all witness statements, affidavits, or declarations in connection with the Involuntary Petition or the Motion to Dismiss.

**RESPONSE:**

18. All Documents and Communications not otherwise requested herein that support or contradict any assertion in the Involuntary Petition or the Motion to Dismiss.

**RESPONSE:**

19. All Documents and Communications that have or will be provided to any testifying experts in connection with the Involuntary Petition or the Motion to Dismiss.

**RESPONSE:**

20. Any and all demonstratives, exhibits, or other materials that will be relied upon at any hearing in connection with the Involuntary Petition or the Motion to Dismiss..

**RESPONSE:**

21. All Documents and Communications concerning or relating to Ultricover.

**RESPONSE:**

Dated: February 9, 2024
Wilmington, Delaware

/s/ Mark L. Desgrosseilliers

Mark L. Desgrosseilliers (I.D. No. 4083)
CHIPMAN, BROWN, CICERO & COLE, LLP
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0192
Facsimile: (302) 295-0199
Email: Desgross@chipmanbrown.com

Counsel for WorkCentric I, LLC, as sole manager of the Alleged Debtor

**EXHIBIT A**

| Field Name | Description |
|---|---|
| BATES BEGIN | Beginning Bates number |
| BATES END | Ending Bates number |
| BEGATTACH | Beginning Bates number of the first document in an attachment range |
| ENDATTACH | Ending Bates number of the last document in an attachment range |
| CUSTODIAN | Name of the Custodian the file was sourced from |
| TO | To field extracted from an email message |
| FROM | From field extracted from an email message |
| CC | CC field extracted from an email message |
| BCC | BCC field extracted from an email message |
| SUBJECT | Subject line extracted from an email message |
| DATE SENT | Sent date of an email message |
| TIME SENT | Sent time of an email message |
| FILE EXTENSION | The file type extension representing the email or non-email file document |
| FILE NAME | The name of the original file including extension |
| AUTHOR | Author field extracted from the metadata of a non-email document |
| DATE CREATED | Date that a file was created |
| TIME CREATED | Time that a file was created |
| DATE MOD | Date that a file was last modified |
| TIME MOD | Time that a file was last modified |
| PRINTED DATE | Date that a file was last printed |
| INTMSGID | Message ID assigned to an email message by the outgoing mail server |
| MD5HASH | MD5 hash value for the document |
| EXTRACTED TEXT | Path to document level extracted text |
| NATIVE LINK | Path to native files |

# EXHIBIT 2

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 7 (Involuntary) |
| WORKCENTRIC LLC, | : | |
| | : | Case No. 24-10040-MFW |
| Alleged Debtor. | : | |
| | : | |

**REQUESTS OF SUNZ INSURANCE SOLUTIONS, LLC FOR PRODUCTION OF DOCUMENTS DIRECTED TO PIPE TECHNOLOGIES, INC.**

PLEASE TAKE NOTICE that, under Rules 26 and 34 of the Federal Rules of Civil Procedure (the "**Federal Rules**"), Rules 7026 and 7034 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), made applicable to the Involuntary Petition (as defined herein) by Bankruptcy Rule 9014, and Rules 7026-1 to 7026-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), counsel for Sunz Insurance Solutions, LLC ("SUNZ"), by and through its undersigned counsel, requests that Pipe Technologies, Inc., in the above-captioned involuntary bankruptcy case respond to the following requests for inspection any documents called for by the following requests for production at the offices of McCarter & English, LLP, Renaissance Centre, 405 N. King Street, 8th Floor, Wilmington, Delaware 19801 (Attn: Kate Roggio Buck, Esq.) on or before April 3, 2024.

These requests for production are subject to the Definitions and Instructions set forth below.

## DEFINITIONS

For the purposes of these document requests (collectively, the "**Requests**"), the following definitions apply:

A. "Alleged Debtor" means Workcentric, LLC, including its subsidiaries, divisions, predecessors and successors in interest, affiliates, parents, and each of its employees, agents, officers, directors, representatives, consultants, accountants, and attorneys, including any person who served in any of these capacities during any relevant period.

B. "Bankruptcy Case" means the above-captioned involuntary case filed against the Alleged Debtor under Chapter 7 of the Bankruptcy Code.

C. "Bankruptcy Code," whether capitalized or not, means Title 11 of the United States Code.

D. "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

E. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

F. "Communication" means the transmission of information in any form, including without limitation, written, oral, or electronic transmissions.

G. "Document" bears the broadest possible meaning ascribed to it in Federal Rule 34(a), which states "any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form," and refers to any document now or at any time in Your possession, custody, or control. "Document" always includes ESI and Communications.

H. “ESI” means Electronically Stored Information and bears the broadest possible meaning ascribed to it in Federal Rules 26(a)(1) and 34(a).

I. “Federal Rules” means the Federal Rules of Civil Procedure.

J. “Involuntary Petition” means the Involuntary Petition Against a Non-Individual (Docket No. 1), filed by You against the Alleged Debtor.

K. “Local Rules” means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

L. “Motion to Dismiss” means that Motion to Dismiss (Docket No. 16) filed by WorkCentric 1, LLC in the Bankruptcy Case.

M. “Person” means any individual, entity, corporation, partnership, unincorporated association, limited liability company, trust, firm, cooperative, fictitious business name, or government agency, as well as any agent, representative, employee, or attorney of each.

N. “SUNZ” means Sunz Insurance Solutions, LLC.

O. “WorkCentric Entities” means (i) Embraceor, LLC, (ii) WorkCentric 1, LLC, (iii) WorkCentric 2, LLC, (iv) WorkCentric 3, LLC, (v) WC TopCo, LLC, and (vi) WC Container, LLC, individually and jointly.

P. “You” and “Your” means Pipe Technologies, Inc., including its subsidiaries, divisions, predecessors and successors in interest, affiliates, parents, and each of its employees, agents, officers, directors, representatives, consultants, accountants, and attorneys, including any person who served in any of these capacities during any relevant period.

Q. “Regarding,” “Concerning,” “Relate,” “Relating to,” or “Related to” means consisting of, referring to, describing, reflecting, or being in any way logically or factually connected with the matter discussed.

R. Capitalized terms defined in the Involuntary Petition or the Motion to Dismiss and used but not otherwise defined herein shall have the meanings ascribed to such terms in the Involuntary Petition or the Motion to Dismiss.

S. Any other term used but not otherwise defined herein shall have the meaning given such term by the Bankruptcy Code, the Bankruptcy Rules, the Federal Rules, the Local Rules, or common usage unless otherwise required by the context.

**INSTRUCTIONS**

The following instructions apply to these Requests:

1. You are requested to produce all Documents and information that are in the possession, custody, or control of You or any of Your employees, agents, representatives, attorneys, investigators, or any other person acting or purporting to act on Your behalf. If a Document is no longer in Your possession, custody, or control, describe the Document and identify who has custody of the Document.

2. Documents to be produced include, without limitation, any responsive Document that was or is prepared, kept, or maintained for the personal use, in the personal files, or as the personal property of any representative of the Persons responding hereto.

3. All Documents are to be produced as kept in the usual course of business with any identifying labels, file markings, or similar identifying features, or shall be organized and labeled to correspond to the categories requested herein.

4. Documents constituting ESI, other than Excel files, must be produced in .tiff format with corresponding load files containing the document’s text and all available metadata. Excel files shall be produced in their native format, .xls or .xlsx. ESI shall be produced on appropriate

electronic media, by file transfer protocol, or by other production agreed to in writing by the parties.

5. A Request for any Document shall be deemed to include a request for all actual, proposed, or contemplated envelopes, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the Document, in addition to the Document itself.

6. A Request for any Document shall be deemed to include a request for all actual, proposed, or contemplated drafts or mark-ups thereof; revisions, modifications, or amendments thereto; and non-identical copies thereof, in addition to the Document itself.

7. The fact that a Document is produced by another party or non-party does not relieve You of the obligation to produce its copy of the same Document, even if the two Documents are identical.

8. All information is to be produced with a Bates number on each page, regardless of the form of production.

9. If you are unable to answer any Request in full, after exercising due diligence to secure the requested information, so state, and explain why the Request cannot be answered in full.

**10.** **Databases**. You shall produce responsive databases as databases, or in a format that may be loaded into a database. Specifically, for responsive databases, you shall provide all tables, table schemas, relationships, and data contained therein in a manner that would enable the recreation of said structures and data in SUNZ's own environment. As you identify databases or portions of databases that are discoverable, you shall inform SUNZ that such a database has been identified before any conversion of the database is prepared so that the parties can meet and confer to discuss production details.

**11.** **Hardcopy Documents**. You shall produce responsive hardcopy Documents in single-page TIFF image format. Additionally, OCR text shall be delivered on a document level, representing the textual content of hardcopy Documents. In addition to the single-page TIFF images and document-level text files, you shall provide load files linking the TIFFs with their associated text file such that the document productions shall be loadable into document management software such as Relativity, or other similar programs.

**12.** **Video and Audio Recordings and Analogous Media**. You shall produce such responsive media in a duplicate copy.

13. All electronic Documents and Communications shall include the metadata described in **Exhibit A**.

14. If any Document or Communication, or any portion of a Document or Communication, is withheld under a claim of privilege or otherwise claimed to be protected against production, for each such Document or Communication state the following in a manner sufficient to allow the Court to rule upon the applicability of the claimed protection:

a. The nature of the privilege(s) or other protection claimed;

b. The legal and factual basis for the privilege(s) or other protection claimed;

c. The type of Document (e.g., letter, memorandum, handwritten notes);

d. A description of the subject matter of the Document, including identification of any attachments or appendices;

e. The date of the Document;

f. the paragraph of this Request to which the Document is responsive;

g. The name of the author(s), addressee(s), and all recipients of the Document and, where not apparent, the relationship of the author(s), addressee(s), and recipients to each other; and

h. In the case of Documents Concerning a meeting or conversation, identify all participants in the meeting or conversation.

A log containing such information concerning any withheld Documents or Communications shall be produced to SUNZ no later than March 18, 2024, or a date otherwise agreed upon by the parties, at the offices of McCarter & English, LLP, Renaissance Centre, 405 N. King Street, 8th Floor, Wilmington, Delaware 19801 (Attn: Kate Roggio Buck, Esq.).

15. The following rules of construction apply to all Requests:

a. All/Any/Each: The terms "all," "any," and "each" shall each be construed as encompassing any and all.

b. And: The connective "and" shall be construed to be conjunctive and so to mean when both or all of the conjunctive parts are satisfied or true.

c. Or: The connective "or" shall be construed to be disjunctive, not exclusive, and so to mean when any or all of the parts are satisfied or true.

d. Number: The use of the singular form of any word includes the plural and vice versa.

e. Gender: The use of one gender shall include the other.

f. Verb Tense: The use of a verb tense shall be construed as the use of the verb in the past or present tense, whenever necessary to bring within the scope of the request for admission all information or documents that might otherwise be construed as outside its scope.

g. Concerning and including. As used herein, the term "concerning" includes regarding, referring to, relating to, reflecting or reflecting upon, mirroring, addressing, discussing, forming the basis of, discussing, analyzing, supporting, constituting, comprising, containing, evidencing, setting forth, showing, disclosing, embodying in, forming the basis of, in connection with, commenting on, responding to, demonstrating, declaring, describing, analyzing, explaining, summarizing, mentioning, evidencing, or reflecting any event, act, or occurrence. As used herein, the term "including" means including, without limitation.

16. If you claim not to understand all or part of any Request, definition, or instruction, please advise SUNZ's counsel immediately so that any lack of understanding may promptly be corrected.

17. The Documents requested include all attachments and enclosures. If any portion of a Document is responsive to a request, produce the entire document, including all attachments,

enclosures, "post-it"-type notes, and any other matter physically attached to the document, whether by paper clip or any other manner. If Documents responsive to these Requests are normally kept in a file or folder, also produce that file or folder with any labels attached thereto and indicate the company, division, department, or individual from whose files the document is being produced. If responsive Documents are segregated or separated from other documents, whether by inclusion in binders, files, sub-files, or by use of dividers, tabs or any other method, produce such Documents in that form.

18. If You are aware of Documents responsive to any Request that are not available to You or subject to Your reasonable access or control, identify to SUNZ's counsel any information You may have concerning the location and possessor of such documents. If the addresses and telephone numbers of an individual or source identified in such response is available, please provide that contact information.

19. If any Document that forms a part of or the entire basis for any response to any Request has been destroyed or lost, for each such Document state when it was destroyed or lost, identify the Person who destroyed or lost the Document and the Person who directed that it be destroyed. In addition, detail the reasons for the destruction, describe the nature of the Document, identify the Person(s) who created, sent, and received the Document, state the date of the Document, and state in as much detail as possible the contents of the Document.

20. The Requests shall be deemed continuing and the responding party and any present or former affiliate or representative of the party responding hereto are required to supplement their production of documents as required by Rule 26(e) of the Federal Rules of Civil Procedure.

21. Although some of the Requests may overlap with other Requests, no Request should be read as limiting any other Request.

22. If a Document cannot be produced in full, produce it to the extent possible, identify the portion that cannot be produced, and specify the reasons for your inability to produce the remainder.

23. SUNZ reserves the right to amend, supplement, or modify these Requests.

24. Unless otherwise stated, each request seeks Documents created, edited, or accessed from March 1, 2023, until the date of this Request.

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

1. All contracts, including, but not limited to, purchase agreements relating to the Alleged Debtor.

2. All contracts, including, but not limited to, purchase agreements relating to the WorkCentric Entities.

3. All Documents reflecting amounts due from the Alleged Debtor to You.

4. All Documents reflecting defaults by the Alleged Debtor.

5. All Documents supporting Your decision to file the Involuntary Petition, including but not limited to all Documents supporting Your contention that the Alleged Debtor is insolvent.

6. All Documents supporting the claim You assert against the Alleged Debtor, including but not limited to any contract, note, or other agreement demonstrating this claim.

7. All Communications between You and the Alleged Debtor regarding any money you claim the Debtor owes You, including but not limited to any attempts to collect the money and any payments You received as part of the alleged debt**.**

8. All Documents concerning any payments You received from the Alleged Debtor, including but not limited to financial records demonstrating the payment and all Documents demonstrating the basis for the payment.

9. All documents regarding any payments You made to the Alleged Debtor, including but not limited to financial records demonstrating the payment and all Documents demonstrating the basis for the payment. All Communications between You and Docks Sutherland regarding the Alleged Debtor and/or the WorkCentric Entities.

10. All Communications between You and David Harvey regarding the Alleged Debtor and/or the WorkCentric Entities.

11. All Communications between You and Sheldon Altschuler regarding the Alleged Debtor and/or the WorkCentric Entities.

12. All Communications between You and Holland & Knight LLP regarding the Alleged Debtor or any claim You have against the Debtor and/or the WorkCentric Entities.

13. All Documents and Communications concerning or relating to due diligence conducted by Pipe on the Alleged Debtor prior to filing the Involuntary Petition.

14. All Documents and Communications concerning or relating to any guarantee of the debt You allege is owed by the Alleged Debtor, including but not limited to any guarantee by any of the WorkCentric Entities.

15. All Documents and Communications concerning or relating to any attempt by Pipe to collect any obligation asserted against the Alleged Debtor, including from the Alleged Debtor or any third party, including but not limited to any of the WorkCentric Entities.

16. All Documents that You intend to use in any way at any deposition, hearing, or trial in connection with the Involuntary Petition or the Motion to Dismiss or in any filings with the Court (whether admissible or demonstrative evidence), including but not limited to all witness statements, affidavits, or declarations in connection with the Involuntary Petition or the Motion to Dismiss.

17. All Documents and Communications not otherwise requested herein that support or contradict any assertion in the Involuntary Petition or the Motion to Dismiss.

18. All Documents and Communications that have or will be provided to any testifying experts in connection with the Involuntary Petition or the Motion to Dismiss.

19. Any and all demonstratives, exhibits, or other materials that will be relied upon at any hearing in connection with the Involuntary Petition or the Motion to Dismiss..

20. All Documents and Communications concerning or relating to Ultricover.

Dated: Wilmington, Delaware
March 4, 2024

**McCARTER & ENGLISH LLP**

By: */s/ Kate Roggio Buck*
Kate Roggio Buck (DE 5140)
McCarter & English LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
Tel: 302-984-6300
Fax: 302-984-6399
Email: kbuck@mccarter.com

-and-

Eyal Berger (appearing *Pro Hac Vice*)
**AKERMAN LLP**
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, FL 33301
Tel: 954-712-6071
Fax: 954-463-2224
Email: eyal.berger@akerman.com

Amanda Klopp (appearing *Pro Hac Vice*)
**AKERMAN LLP**
777 South Flagler Drive, Suite 1100 West Tower
West Palm Beach, FL 33401
Tel: 561-273-5526
Fax: 561- 659-6313
Email: amanda.klopp@akerman.com

*Attorneys for Sunz Insurance Solutions, LLC*

**EXHIBIT A**

| Field Name | Description |
|---|---|
| BATES BEGIN | Beginning Bates number |
| BATES END | Ending Bates number |
| BEGATTACH | Beginning Bates number of the first document in an attachment range |
| ENDATTACH | Ending Bates number of the last document in an attachment range |
| CUSTODIAN | Name of the Custodian the file was sourced from |
| TO | To field extracted from an email message |
| FROM | From field extracted from an email message |
| CC | CC field extracted from an email message |
| BCC | BCC field extracted from an email message |
| SUBJECT | Subject line extracted from an email message |
| DATE SENT | Sent date of an email message |
| TIME SENT | Sent time of an email message |
| FILE EXTENSION | The file type extension representing the email or non-email file document |
| FILE NAME | The name of the original file including extension |
| AUTHOR | Author field extracted from the metadata of a non-email document |
| DATE CREATED | Date that a file was created |
| TIME CREATED | Time that a file was created |
| DATE MOD | Date that a file was last modified |
| TIME MOD | Time that a file was last modified |
| PRINTED DATE | Date that a file was last printed |
| INTMSGID | Message ID assigned to an email message by the outgoing mail server |
| MD5HASH | MD5 hash value for the document |
| EXTRACTED TEXT | Path to document level extracted text |
| NATIVE LINK | Path to native files |

# EXHIBIT 3

**Margolin, Jason (Ptnr-Tpa)**

| | |
|---|---|
| **From:** | Margolin, Jason (Ptnr-Tpa) |
| **Sent:** | Friday, May 17, 2024 11:05 AM |
| **To:** | 'Poli, Nicholas'; Burke, James W.; dpacitti@klehr.com; rbeck@klehr.com; Jacobsen, Richard; Trentin, Michael |
| **Cc:** | Berger, Eyal (Ptnr-Ftl); 'Buck, Kate'; desgross@chipmanbrown.com; Renae Fusco; Klopp, Amanda (Assoc-WPB) |
| **Subject:** | FW: Conferral re WorkCentric |
| **Attachments:** | 2024.05.17-WorkCentric - Protective Order and Confidentiality Agreement.docx |

Nick,

On the Protective Order, we can accept all of your changes except the deletions you made in paragraph 12, which would prohibit the parties from using highly confidential material in a deposition or with the Court. The attached version accepts all of your changes, except that one. If this form is acceptable, you may submit. If we need to discuss further, let us know.

As to your summary on the discovery responses and objections, I've replied to each below in red.

Sunz Objections and Responses:

- Sunz agreed to reproduce with Bates stamps all of the documents and communications it filed on the public docket.
  - Yes, as part of our compromise, we will produce a bates stamped set of the material we have relied upon, even though it is equally accessible to you in the public docket.
- Request 2(b) – Sunz does not believe that it has any responsive documents and that information responsive to this request would come from either Pipe or WorkCentric. We ask that you confirm in writing that Sunz has no responsive documents in its possession, custody or control. To the extent Sunz has responsive communications, their relevance is manifest and they must be produced.
  - Yes, Sunz anticipates the production from Pipe or WorkCentric (not from SUNZ) would be responsive to 2(B).
- For RFPs 2(d), 2(i), 3, 7, 9, 10, and 11, your responses and objections identify only the documents that have been filed on the public docket. Please confirm whether those are the only responsive documents in Sunz's possession, custody, or control. To the extent that Sunz has additional responsive materials, please confirm you will conduct a reasonable search. We understand that Sunz has certain contracts in its possession that are responsive to RFP 2(d) and they will be produced.
  - For 2(d), SUNZ will agree to produce the contracts with the debtor for prior program years and most recent year.
  - For 2(i), 3, 7, 9, and 10, we believe the only responsive documents in our possession/custody/control are on the docket, which we agree to reproduce as set forth in our first response.
  - For 11, communications on the Rule 1003(b) Creditor List, I'm not aware of any list being filed, so the answer is None, as in 12. If/when a list is filed, we can revisit the other objections.
- With respect to RFP No. 4, you agreed to produce the form notice and a list of recipients. Pipe will review that information and assess whether it wants all letters or a subset.
  - Yes, we will produce an example (at least 1 letter) of the form notice sent out, and a list of the recipients or other disclosure of the volume of letters.
- For RFP 5, you are not aware of any profitability analysis but were uncertain if one was performed. Please confirm with your client whether such an analysis exists and, if so, produce it.
  - Correct, SUNZ reasonably anticipates the Former Managers were not operating in a profitable manner and were under pricing their accounts, which is why they were unable to pay SUNZ the amounts due (especially if your clients gave them $44 million and they still owed nearly $25 million as you claim). But

until we get access to the alleged debtor's records and files, SUNZ cannot and has not done a "profitability analysis" as you requested.

- With respect to RFP No. 13, you confirmed that there are some communications with Holland and Knight and the arbitrator, but you are not aware of any other responsive communications. Please confirm whether you will produce the communications with Holland and Knight.
    - With respect to RFP No. 13, we understood your request to seek communications between SUNZ and any of those parties. There are None. To the extent you are asking about communications between Akerman and those parties, there are none for (a)-(c), as those were all represented persons during the relevant time period. Akerman would have had some communications with Holland & Knight after the Petition Date within the context of the Arbitration (and communicating to the AAA that the Arbitration was stayed) and to the extent we conferred about matters in the bankruptcy case. On our call, I think you all agreed you did not need to see those communications. So we do not plan to produce them (or anything with respect to No. 13).

Pipe's Objections and Responses:

- For requests 9.1 through 11, we will confirm whether there are any other engagements between Pipe and Docks Sutherland, David Harvey, and/or Sheldon Altschuler.
    - Yes
- For request 12, we are not excluding from production responsive communications, if any, with Holland & Knight.
    - Thank you for confirming.
- For request 20, while we dispute the relevance of Ultricover, in the interest of compromise, we will confirm with our client whether there was any discussion regarding this entity. As we mentioned yesterday, we are not aware of one.
    - Please let us know once you confirm.

Also, we agreed to revisit Pipe's remaining objections after the production is made because until then, we cannot fully assess your responses, which object, but then agree to produce the responsive documents.

Best,
Jason

**Jason L. Margolin**
Partner
Florida Supreme Court Qualified Arbitrator
Florida Supreme Court Certified Circuit Mediator
Akerman LLP | 401 East Jackson Street, Suite 1700 | Tampa, FL 33602
D: 813 209 5009 | F: 813 218 5488
Admitted to Practice in Florida and District of Columbia
jason.margolin@akerman.com

---

**From:** Poli, Nicholas <npoli@orrick.com>
**Sent:** Thursday, May 16, 2024 11:39 AM
**To:** Margolin, Jason (Ptnr-Tpa) <jason.margolin@akerman.com>; desgross@chipmanbrown.com; Doughty@chipmanbrown.com; Fusco@chipmanbrown.com; Burke, James W. <jburke@Orrick.com>; Jacobsen, Richard <rjacobsen@orrick.com>; rbeck@klehr.com; dpacitti@klehr.com; Trentin, Michael <mtrentin@orrick.com>; Kasyan, Konstantin <kkasyan@orrick.com>
**Cc:** Berger, Eyal (Ptnr-Ftl) <eyal.berger@akerman.com>; KBuck@mccarter.com; Klopp, Amanda (Assoc-WPB) <amanda.klopp@akerman.com>
**Subject:** RE: Conferral re WorkCentric

**[External to Akerman]**

Jason, Mark, Eyal,

Thanks again for taking the time to meet and confer this past Tuesday and last week. I write to memorialize our discussions regarding discovery. Also attached are track change comments to the draft protective order. Let us know if these are acceptable.

Sunz Objections and Responses:

- Sunz agreed to reproduce with Bates stamps all of the documents and communications it filed on the public docket.
- Request 2(b) – Sunz does not believe that it has any responsive documents and that information responsive to this request would come from either Pipe or WorkCentric. We ask that you confirm in writing that Sunz has no responsive documents in its possession, custody or control. To the extent Sunz has responsive communications, their relevance is manifest and they must be produced.
- For RFPs 2(d), 2(i), 3, 7, 9, 10, and 11, your responses and objections identify only the documents that have been filed on the public docket. Please confirm whether those are the only responsive documents in Sunz's possession, custody, or control. To the extent that Sunz has additional responsive materials, please confirm you will conduct a reasonable search. We understand that Sunz has certain contracts in its possession that are responsive to RFP 2(d) and they will be produced.
- With respect to RFP No. 4, you agreed to produce the form notice and a list of recipients. Pipe will review that information and assess whether it wants all letters or a subset.
- For RFP 5, you are not aware of any profitability analysis but were uncertain if one was performed. Please confirm with your client whether such an analysis exists and, if so, produce it.
- With respect to RFP No. 13, you confirmed that there are some communications with Holland and Knight and the arbitrator, but you are not aware of any other responsive communications. Please confirm whether you will produce the communications with Holland and Knight.

Pipe's Objections and Responses:

- For requests 9.1 through 11, we will confirm whether there are any other engagements between Pipe and Docks Sutherland, David Harvey, and/or Sheldon Altschuler.
- For request 12, we are not excluding from production responsive communications, if any, with Holland & Knight.
- For request 20, while we dispute the relevance of Ultricover, in the interest of compromise, we will confirm with our client whether there was any discussion regarding this entity. As we mentioned yesterday, we are not aware of one.

Nick

---

**From:** Poli, Nicholas
**Sent:** Monday, May 6, 2024 6:24 PM
**To:** jason.margolin@akerman.com; desgross@chipmanbrown.com; Doughty@chipmanbrown.com; Fusco@chipmanbrown.com; Burke, James W. <jburke@Orrick.com>; Jacobsen, Richard <rjacobsen@orrick.com>; rbeck@klehr.com; dpacitti@klehr.com; Trentin, Michael <mtrentin@orrick.com>; Kasyan, Konstantin <kkasyan@orrick.com>
**Cc:** eyal.berger@akerman.com; KBuck@mccarter.com; amanda.klopp@akerman.com
**Subject:** RE: Conferral re WorkCentric

Sure – will send an invite.

Nick

**From:** jason.margolin@akerman.com <jason.margolin@akerman.com>
**Sent:** Monday, May 6, 2024 4:28 PM
**To:** Poli, Nicholas <npoli@orrick.com>; desgross@chipmanbrown.com; Doughty@chipmanbrown.com; Fusco@chipmanbrown.com; Burke, James W. <jburke@Orrick.com>; Jacobsen, Richard <rjacobsen@orrick.com>; rbeck@klehr.com; dpacitti@klehr.com; Trentin, Michael <mtrentin@orrick.com>; Kasyan, Konstantin <kkasyan@orrick.com>
**Cc:** eyal.berger@akerman.com; KBuck@mccarter.com; amanda.klopp@akerman.com
**Subject:** RE: Conferral re WorkCentric

**[EXTERNAL]**

Nick,

Can you all do Thursday at lunch?

Thanks,

**Jason L. Margolin**
Partner
Florida Supreme Court Qualified Arbitrator
Florida Supreme Court Certified Circuit Mediator
Akerman LLP | 401 East Jackson Street, Suite 1700 | Tampa, FL 33602
D: 813 209 5009 | F: 813 218 5488
Admitted to Practice in Florida and District of Columbia
jason.margolin@akerman.com

---

**From:** Poli, Nicholas <npoli@orrick.com>
**Sent:** Monday, May 6, 2024 4:12 PM
**To:** Margolin, Jason (Ptnr-Tpa) <jason.margolin@akerman.com>; desgross@chipmanbrown.com; Doughty@chipmanbrown.com; Fusco@chipmanbrown.com; Burke, James W. <jburke@Orrick.com>; Jacobsen, Richard <rjacobsen@orrick.com>; rbeck@klehr.com; dpacitti@klehr.com; Trentin, Michael <mtrentin@orrick.com>; Kasyan, Konstantin <kkasyan@orrick.com>
**Cc:** Berger, Eyal (Ptnr-Ftl) <eyal.berger@akerman.com>; KBuck@mccarter.com; Klopp, Amanda (Assoc-WPB) <amanda.klopp@akerman.com>
**Subject:** RE: Conferral re WorkCentric

**[External to Akerman]**

Jason,

Tuesday is tight for us. Any chance you can do Wednesday? If so, I'll send around an invite.

We will revert on the protective order.

Thanks,
Nick

---

**From:** jason.margolin@akerman.com <jason.margolin@akerman.com>
**Sent:** Monday, May 6, 2024 10:36 AM
**To:** Poli, Nicholas <npoli@orrick.com>; desgross@chipmanbrown.com; Doughty@chipmanbrown.com; Fusco@chipmanbrown.com; Burke, James W. <jburke@Orrick.com>; Jacobsen, Richard <rjacobsen@orrick.com>; rbeck@klehr.com; dpacitti@klehr.com
**Cc:** eyal.berger@akerman.com; KBuck@mccarter.com; amanda.klopp@akerman.com
**Subject:** RE: Conferral re WorkCentric

**[EXTERNAL]**

Nick,

Please let us know if we could set this call tomorrow (Tuesday May 7) during lunch, as you suggested.

Also, please let us know your comments on the protective order.

Thanks,
**Jason L. Margolin**
Partner
Florida Supreme Court Qualified Arbitrator
Florida Supreme Court Certified Circuit Mediator
Akerman LLP | 401 East Jackson Street, Suite 1700 | Tampa, FL 33602
D: 813 209 5009 | F: 813 218 5488
Admitted to Practice in Florida and District of Columbia
jason.margolin@akerman.com

---

**From:** Poli, Nicholas <npoli@orrick.com>
**Sent:** Tuesday, April 30, 2024 5:27 PM
**To:** Margolin, Jason (Ptnr-Tpa) <jason.margolin@akerman.com>; desgross@chipmanbrown.com; Doughty@chipmanbrown.com; Fusco@chipmanbrown.com; Burke, James W. <jburke@Orrick.com>; Jacobsen, Richard <rjacobsen@orrick.com>; rbeck@klehr.com; dpacitti@klehr.com
**Cc:** Berger, Eyal (Ptnr-Ftl) <eyal.berger@akerman.com>; KBuck@mccarter.com; Klopp, Amanda (Assoc-WPB) <amanda.klopp@akerman.com>
**Subject:** RE: Conferral re WorkCentric

**[External to Akerman]**

Counsel,

A number of us are in transit this week for various matters, including a trial that begins on May 6. Could we please schedule the meet and confer for this Sunday between noon and 2 pm ET? We apologize for the weekend intrusion.

If that does not work, we can find time next week before the trial days begin or during lunch. We will separately review the protective order.

Thanks,
Nick

---

**From:** jason.margolin@akerman.com <jason.margolin@akerman.com>
**Sent:** Tuesday, April 30, 2024 4:36 PM
**To:** desgross@chipmanbrown.com; Doughty@chipmanbrown.com; Fusco@chipmanbrown.com; Burke, James W. <jburke@Orrick.com>; Jacobsen, Richard <rjacobsen@orrick.com>; Poli, Nicholas <npoli@orrick.com>; rbeck@klehr.com; dpacitti@klehr.com
**Cc:** eyal.berger@akerman.com; KBuck@mccarter.com; amanda.klopp@akerman.com
**Subject:** Conferral re WorkCentric

**[EXTERNAL]**

Counsel,

Please let us know some dates/times when we can speak this week to discuss this matter. First, we want to discuss the exchange of discovery amongst the parties and resolving all pending objections. Relatedly, we have attached a draft protective

order and confidentiality agreement for your review. Second, we also need to discuss the timeline for setting the final evidentiary hearing on the motions to dismiss and to address any pre-evidentiary hearing requirements, including mediation.

Best,
Jason

**Jason L. Margolin**
Partner
Florida Supreme Court Qualified Arbitrator
Florida Supreme Court Certified Circuit Mediator
Akerman LLP | 401 East Jackson Street, Suite 1700 | Tampa, FL 33602
D: 813 209 5009 | F: 813 218 5488
Admitted to Practice in Florida and District of Columbia
jason.margolin@akerman.com

vCard | Profile | Connect With Me

CONFIDENTIALITY NOTE: The information contained in this transmission may be privileged and confidential, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error

by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

# EXHIBIT 4

**Margolin, Jason (Ptnr-Tpa)**

**From:** Margolin, Jason (Ptnr-Tpa)
**Sent:** Monday, August 19, 2024 4:00 PM
**To:** jburke@orrick.com; Jacobsen, Richard; Poli, Nicholas; DPacitti@klehr.com; rbeck@klehr.com; Trentin, Michael
**Cc:** Berger, Eyal (Ptnr-Ftl); Klopp, Amanda (Assoc-WPB); kbuck@mccarter.com; Fusco@chipmanbrown.com; Mark Desgrosseilliers; Carver, Christopher (Ptnr-Ftl); Molaskey, Keenan (Assoc-Tpa)
**Subject:** Conferral re WorkCentric

All,

We are following up on our prior conferrals regarding Pipe's production in response to the requests for production from SUNZ and WorkCentric 1 LLC.

During our last conferral, we agreed to follow up after Pipe finally produced its documents. Now that you have made Pipe's production, we have reviewed it and note the following deficiencies.

First, Pipe must produce complete signed contracts. SUNZ requested all contracts with the Alleged Debtor and any of its affiliates in Request for Production Nos. 1 and 2. We understand Pipe contends at least two contracts with the Alleged Debtor exist because on Feb. 23, 2024, with the Declaration of Lucus Voiles (Doc.56) (the "Voiles Declaration"), Pipe filed two partial documents Pipe identified as the "February 1, 2021 Pipe Agreement" and "November 21, 2021 Pipe Agreement" as Exhibits A and B thereto (the "Pipe Contracts"). Both Pipe Contracts:

- End at paragraph 13(i)
- Omit any signature block (for Pipe and for the "client")
- Lack any evidence that the Client is the Alleged Debtor (WorkCentric LLC) or any affiliate.
- Omit any date of execution. (The dates supplied in the Voiles Declaration are not shown in the Contracts).

Pipe must immediately produce complete copies of the Pipe Contracts.

Second, Pipe must produce proof of all payments made by Pipe to the Alleged Debtor, as well as all payments by the Alleged Debtor to Pipe. To the extent Pipe exchanged funds with one of the Alleged Debtor's affiliates or principals, documents evidencing those transfers should also be produced. SUNZ requested this information in Request for Production Nos. 3-4, 6-9.

Again, in the Voiles Declaration, Pipe paid WorkCentric $44,131,087. Pipe must produce wire confirmations, bank statements, cancelled checks, or other documentation sufficient to show this money was actually transferred from Pipe to the Alleged Debtor. Presuming Pipe did actually transfer money to WorkCentric, and was partially repaid as Pipe alleges, then Pipe must produce documentation showing all transfers of funds from WorkCentric back to Pipe.

If you contend these documents have already been produced, please identify the bates-numbers where the information can be located.

We have been asking for this basic documentation for a long time. Accordingly, we must ask that you produce these documents no later than Friday, August 23, 2024, to avoid further motion practice on this issue.

**Jason L. Margolin**
Partner
Florida Supreme Court Qualified Arbitrator
Florida Supreme Court Certified Circuit Mediator
Akerman LLP | 401 East Jackson Street, Suite 1700 | Tampa, FL 33602
D: 813 209 5009 | F: 813 218 5488
Admitted to Practice in Florida and District of Columbia

jason.margolin@akerman.com

# EXHIBITS 5 THROUGH 9
# FILED UNDER SEAL

# EXHIBIT 10

**IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND**

| | |
|---|---|
| **MACDONALD PROPERTIES, LLC, et al.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**SHELDON ALTSCHULER, et al.,**<br><br>**Defendants.** | **Case No.: C-15-CV-24-000761** |

**AFFIDAVIT OF DAVID HARVEY**

I, David Harvey, hereby declare:

1. I am over 18 years of age and competent to testify to the facts and matters set forth in this Affidavit, which facts and matters are stated upon my own personal knowledge.

2. WC TopCo LLC acquired WorkCentric LLC from Sheldon Altschuler in 2021. I am a Manager of WC TopCo, and I have been a Manager of WC TopCo since its inception.

3. At the time that WC TopCo acquired WorkCentric, WC TopCo was owned by the Immediate Company. The Immediate Company was owned by Docks Sutherland. In October 2023, ownership of WC TopCo was transferred to WC Container LLC, and WC TopCo is still currently owned by WC Container. WC Container is owned by Mr. Sutherland, and he has been the owner of WC Container since its formation.

4. In September 2022, WC TopCo retained Quinn Emanuel to represent it in connection with its dispute with Chad MacDonald. That retention was approved by Mr. Sutherland. I was aware of the retention of Quinn Emanuel, and I agreed with it.

5. Quinn Emanuel represented WC TopCo during the negotiation of the Settlement Agreement with Chad MacDonald. Quinn Emanuel has continued to represent WC TopCo in this lawsuit. Mr. Sutherland approved Quinn Emanuel's continued representation of WC TopCo in this lawsuit. I was aware of Quinn Emanuel's continued representation of WC TopCo in this lawsuit, and I agreed with it.

6. After this lawsuit was filed, WC TopCo retained Miles & Stockbridge to represent it as Maryland counsel in this lawsuit. Mr. Sutherland approved the retention of Miles & Stockbridge. I was aware of the retention of Miles & Stockbridge, and I agreed with it.

7. WorkCentric was a professional employer organization that provided human resources services to its clients. One of these services was workers' compensation insurance. Under its insurance program, WorkCentric maintained a master workers' compensation insurance policy with Sunz Insurance Solutions. WorkCentric offered its clients access to that workers' compensation insurance coverage.

8. As part of its agreement with Sunz, WorkCentric entered into a Quotation Agreement and Loss Fund Management Agreement with Sunz. Attached as Exhibit A is a true and correct copy of the Quotation Agreement that was filed by Sunz in *Sunz Insurance Solutions, LLC v. Sutherland et al.*, Case No. 8:23-cv-02517, in the United States District Court for the Middle District of Florida.

9. As part of its agreement with Sunz, WorkCentric also entered a Loss Fund Management Agreement with Sunz. Attached as Exhibit B is a true and correct copy of the Loss Fund Management Agreement that was filed by Sunz in *Sunz Insurance Solutions, LLC v. Sutherland et al.*, Case No. 8:23-cv-02517, in the United States District Court for the Middle District of Florida.

10. WorkCentric paid premiums to Sunz under the master policy. WorkCentric also collected a percentage of the premiums paid by its clients and contributed them to a loss fund account that Sunz maintains on behalf of the WorkCentric program. The loss fund account was intended to cover claims filed by insureds for up to $500,000.00 per claim. Sunz determined the amount required for the loss fund account, and it then invoiced WorkCentric for that amount.

11. By September and October 2023, WorkCentric was financially constrained. Sunz had significantly increased the amount required for the loss fund account, to the point where it was no longer financially sustainable for WorkCentric. At that time, WorkCentric was attempting to acquire new funding.

12. When WorkCentric was unable to pay its premiums and the amount requested by Sunz for the loss fund reserve, Sunz pressured it to sign a forbearance and pledge agreement. WorkCentric entered negotiations with Sunz, but initially resisted signing the agreement.

13. In early October 2023, Sunz sent notices of cancellation to WorkCentric's clients. These notices threatened to destroy WorkCentric's business relationships. In an attempt to salvage its business, WC TopCo and WorkCentric had no choice but to agree to the Forbearance Agreement and Pledge Agreement in exchange for Sunz's agreement to rescind the notices of cancellation.

14. Attached as Exhibit C is a true and correct copy of the Forbearance Agreement and Pledge Agreement, which were filed by Sunz in *In re WorkCentric LLC, Alleged Debtor*, Case No. 24-10040, in United States Bankruptcy Court for the District of Delaware. The Pledge Agreement is attached as an exhibit to the Forbearance Agreement.

15. Days after the Forbearance Agreement and Pledge Agreement were entered into, Sunz claimed that the loss fund account deficit had increased by more than $6 million, and it demanded that WorkCentric pay that amount.

16. In late October 2023 and November 2023, Sunz began taking steps to attempt to assert control over WorkCentric. Among other things, this included improper attempts to access WorkCentric's financial accounts, QuickBooks data, bank accounts, and proprietary information.

17. On November 3, 2023, Sunz filed a lawsuit in United States District Court for the Middle District of Florida against WC Container, WC TopCo, WorkCentric, certain other companies related to WorkCentric, Sheldon Altschuler, Docks Sutherland, and me concerning claims arising out of the Forbearance Agreement and Pledge Agreement. As part of the lawsuit in Florida, among other things, Sunz sought appointment of a receiver over WC Container, WC TopCo, WorkCentric, and other companies related to WorkCentric.

18. Attached as Exhibit D is a true and correct copy of an order issued November 10, 2023 by the United States District Court for the Middle District of Florida in *Sunz Insurance Solutions, LLC v. Sutherland et al.*, Case No. 8:23-cv-02517.

19. Pursuant to the order issued by the United States District Court for the Middle District of Florida, a mediation was commenced. The mediation ultimately did not lead to a resolution.

20. On November 16, 2023, WC Container, WC TopCo, WorkCentric, and certain related companies filed a Statement of Claim in arbitration in Florida against Sunz. The Statement of Claim arose out of Sunz's improper attempts to take control of WorkCentric.

21. In January 2024, an involuntary bankruptcy petition was filed against WorkCentric in *In re WorkCentric LLC, Alleged Debtor*, Case No. 24-10040, in United States Bankruptcy Court

for the District of Delaware. The arbitration stopped moving forward after the involuntary bankruptcy petition was filed against WorkCentric. Attached as Exhibit E is a true and correct copy of a document entitled, "Certification of Counsel Regarding Order Granting Emergency Motion of WorkCentric 1, LLC to Strike Motion to Dismiss Involuntary Petition Filed By Purported Alleged Debtor," including Exhibits A through D thereto, filed March 29, 2024 in the bankruptcy proceeding.

22. I solemnly affirm under the penalties of perjury that the contents of this document are true to the best of my knowledge, information, and belief.

September 10, 2024

David Harvey

# EXHIBIT A

SUNZ
INSURANCE

# QUOTATION AGREEMENT

## Large Deductible Workers' Compensation Insurance Program

**Effective Date:** January 1, 2023

**Program Owner Entities:** Embraceor, LLC; WorkCentric, LLC; WorkCentric 2, LLC; and WorkCentric 3, LLC

**Program Owner Address:** 1900 Reston Metro Plaza, Suite 600, Reston, VA 20190

# NOTICE

- Premium may be subject to change based on any pending rate, experience modification and/or state surcharge changes.
- This quote agreement supersedes and replaces any previously issued quote proposal offering similar coverages, limits and deductibles.
- The terms and conditions set forth herein are valid for thirty (30) days from the date of the proposal or until accepted, whichever is earlier. Coverage may not be bound retroactively.
- This is intended as a total offering and must be accepted or rejected in its entirety. Please contact the underwriter in the event that only a portion of the quoted coverages are desired.
- Prior to the effective date of coverage, SUNZ must be advised of any change in the information provided by or required to be provided by the applicant, or any change in the exposure basis, hazard or risk contemplated by this proposal since the original submission date.
- SUNZ reserves the right to modify or withdraw this Quotation Agreement prior to acceptance based on any newly obtained information. If information SUNZ obtains during the policy term differs from what was originally presented SUNZ also reserves the right to modify premium and terms or rescind coverage as permitted by law.
- All terms, conditions and other requirements set forth herein must be included in any quote presentation to the proposed insured.

# PROGRAM SUMMARY & TERMS

| | |
|---|---|
| **Insurance Company** | SUNZ Insurance Company (SUNZ) |
| **Program Type** | $500,000 Per Accident Deductible |
| **State(s) Covered at Bind** | All states as approved by underwriting |
| **Contingency** | Signed Quotation, Signed Loss Fund Management Agreement, Signed Notice of Dispute Resolution and Client Acknowledgement, Funds Due at Bind, and Acceptable Background Check |
| **Aggregate Limit** | N/A |
| **Coverage** | Workers' Compensation |
| **Limits of Coverage** | Workers' Compensation – Statutory Employers Limits |
| | Bodily Injury by Accident — $1,000,000 Each Accident |
| | Bodily Injury by Disease — $1,000,000 Policy Limit |
| | Bodily Injury by Disease — $1,000,000 Each Employee |
| **Waiver of Subrogation** | Varies by State |
| **Alternate Employer Endorsement** | No Charge |

| | |
|---|---|
| **Deductible – per accident** | **$500,000** |
| Estimated Payroll | $311,318,790 |
| Estimated Manual Premium | $8,833,365 |
| Submit Rate as a Percent of Manual Premium | 30.50% of Manual Premium |
| Estimated Annual Deductible Premium | $2,694,176 |
| Estimated Annual Taxes / Surcharges / Assessments | $203,178 |
| Loss Fund | 66.00% of Manual Premium |
| *Estimated Payroll – WI | $4,653,249 |
| *Estimated Premium – WI | $387,660 |
| *Estimated Earned Premium – WI | $610,507 |
| **Due at Binding** | **$0** |
| **Estimated Post Bind Funding** | |
| Est. Weekly Premium Installments as a % of Manual Premium | 30.50% of Manual Premium |
| Est. Weekly Loss Fund Installments as a % of Manual Premium | 66.00% of Manual Premium |
| **Est. Total Weekly Funding (as a % of Manual Premium)** | 96.50% of Manual Premium |
| **Deductible Reimbursement Payments: Will be deducted from Loss Fund** | |

# COST CONTAINMENT EXPENSES

**Bill Review and Repricing**:

Medical and pharmacological bill review and repricing services will be charged at a flat rate of 22% of the total savings realized from provider's billed charges to final payment.

**External Field and Telephonic Case Management**:

In the claims administration process, NLA adjusters may determine it is necessary for telephonic or field nurse case management assistance. The charges for such services are as follow:

- TX, MT, AZ, OK, IN — $125.00 per hour
- CA — $135.00 per hour
- All Other States — $115.00 per hour
- Catastrophic Case Management — $135.00 per hour
- Mileage — Additional at prevailing IRS Rate
- Other Expenses — at cost

**SIU Services– Engagement Protocol**

- The adjuster will engage special investigation services to a claim where the adjuster believes such services are necessary, as set forth below:

| DIGITAL INTELLIGENCE UNIT | |
|---|---|
| **SERVICE** | **RATE** |
| Asset Check | $250 |
| Canvass | 30+ Facilities = $300<br>20-29 Facilities = $225<br>10-19 Facilities = $150 |
| Background Investigation | $250 |
| SIU Snapshot | $50 |
| Digital Intel Gathering (DIG) | $250 |
| Digital Intel Gathering Monitoring (DIGM) | $100/Update |
| Litigation History Investigation | $250 |
| Video (Each Additional Hard Copy) | $15 |
| **FIELD INVESTIGATIONS UNIT** | |
| **SERVICE** | **RATE** |
| Surveillance | $700 |
| Testimony/Court Appearance | $625 |
| Wellness Visit | $250 |

| FRAUD/COMPLIANCE UNIT | |
|---|---|
| **SERVICE** | **RATE** |
| Viability Analysis/Review | $800 |
| Anti-Fraud Plan Filing | $250/State |
| Anti-Fraud Referral | $200 |
| Regulatory Fraud Reporting | $400 |
| Anti-Fraud Compliance Training (One Hour) | $50/person |
| Anti-Fraud Compliance Training (Two Hour) | $75/person |
| **HOURLY SERVICES** | |
| **SERVICE** | **RATE** |
| Contestable Death Claim Investigation (CDCI), Due Diligence, Locate Investigation, Recorded Statement, Record Retrieval, Clinic Investigation and all other relatable services. | $87.50/hr |

**All Other Allocated Loss Adjustment Expenses or Ancillary Services**:

- Billed at actual cost as negotiated with the vendors
- Subrogation recovery billed at thirty-three percent (33%) of the gross amount recovered

# TERMS & CONDITIONS

Sunz Insurance Solutions, LLC ("Sunz") has been appointed the Managing General Agent ("MGA") by SUNZ Insurance Company ("SUNZ"). As MGA, Sunz will cause SUNZ to issue Workers' Compensation insurance policies (the "policies" or "Insurance Policy(ies)") on requests You submit and that Sunz approves consistent with the terms and conditions of the agreements entered into and endorsements to the policy(ies) which collectively is deemed to constitute Your Insurance Program.

Program Owner, also referred to herein as You, is defined as the collective entities listed as Program Owner Entities on the cover page of this Agreement.[1]

This Agreement is based solely on information and data You provided to Sunz. You should inform Sunz promptly of any deficiencies or incorrect information identified in Your insurance Program so an effort can be made to address them. You shall be responsible, and You agree Sunz will not be responsible, for consequences arising from the submission of deficient or incorrect information to SUNZ.

If any term or condition in this Agreement contradicts or is inconsistent with a stated term or listed condition in an insurance policy, the term or condition of the insurance policy will prevail.

Your premium and loss fund obligations under this Agreement are rated and priced in accordance with the terms of the Large Deductible filings of Your insuring company. Loss Fund is a mandatory part of this insurance program. Failure to pay Loss Fund as required shall be considered a material misrepresentation that may result in cancellation of your insurance policies. If permitted by law, such non-payment of Loss Fund or deductible reimbursement shall be treated in the same manner as non-payment of premium.

Premium is subject to each state's minimum premium charges that apply to each policy(ies) issued pursuant to this Agreement and, in order to conform with the regulatory obligations of each state, may in some instances reflect pricing different from that set forth above. The final audit will include regulatory balance to minimum charges for any policy issued that invokes minimum premium.

If there is any further or additional information relevant to the matters contained in this agreement, please make sure to provide those to Sunz so this Agreement reflects accurately all relevant information.

**1. UNDERWRITING & SUBMISSIONS. TAXES & SURCHARGES. MONOPOLISTIC STATES**

a. Underwriting & Submissions: Each policy submission request or client addition through endorsement to the policy(ies) (hereafter referred to as "submission") will be underwritten individually and Sunz retains the exclusive right and sole authority to accept or reject each submission. Upon acceptance of a submission, an insurance policy or endorsement thereto will be issued to the requested policyholder as needed. This is an important part of Your Insurance Program.

b. Provision of Proof of Insurance: You may be required to provide evidence of insurance to interested persons, boards, bureaus, lessors or other organizations. Sunz will provide You with such evidence of insurance. With respect to the issuance by Sunz of such proof of insurance, You agree to indemnify and hold Sunz harmless against any and all claims, settlements, lawsuits, payments, penalties, administrative proceedings, judgments, damages, interest charges, costs or expenses, including attorneys' fees, resulting from or arising out of or in connection with our issuance of the evidence of the Insurance Program to the extent not caused by Sunz's negligence.

---

[1] Included as a "Program Owner" shall be any subsequent entity endorsed as an additional named insured to any insurance policy(ies) where such subsequent entity, under NCCI's experience rating plan or the experience rating plan of the applicable rating bureau, may be deemed combinable with the listed Program Owners set forth herein.

c. Taxes, Assessments, and Surcharges: As required in the insurance policy, Sunz may collect from You certain premium taxes, special taxes, governmental surcharges, assessments and other surcharges in addition to the premium for the policies issued. Your ultimate payment obligation for such taxes and surcharges may change to reflect actual changes in the exposure base, changes in the definition of the surcharge or assessment basis or changes in rate used to calculate such charges. You agree to pay the full amount of such charges. These charges are NOT INCLUDED in the funding rate set forth above.

d. Monopolistic States: You agree to obtain workers' compensation insurance coverage through the proper monopolistic states' workers' compensation agencies for any employees with operations or activities in such monopolistic states. You agree to provide Sunz with evidence of such monopolistic state workers' compensation insurance coverage.

e. Premium and Loss Fund Payments.

i. If you are submitting payroll on a weekly basis, You agree to submit the previous week's payroll no later than Wednesday following the payroll week.

ii. If you are submitting payroll on a weekly basis, weekly invoices are issued and distributed to the insured Tuesday following the prior week's payroll submission. The invoices are a "bill all" invoice, unless rejected payroll codes were submitted or payroll cannot be associated to a policy. Support for the invoice contains all detail regarding amount billed and amount rejected, if any. The invoice amount reconciles to the weekly payroll processed.

iii. If you are submitting payroll on a weekly basis, payment of invoiced premium and loss fund generated from prior week payroll is due the following Friday. Failure to make timely payments will result in the issuance of a "Notice of Cancellation."

iv. Payment of premium audit invoices is due no later than 30 days from the date issued. Failure to make timely payments will result in the issuance of a "Notice of Cancellation."

v. The Loss Fund Management Agreement contains the terms and conditions for the calculation and payment of Loss Fund. Weekly loss fund rates are established at the beginning of the policy by this Quotation Agreement. As set forth in Section B(2)(a) of the Loss Fund Management Agreement, if You experience greater than anticipated losses, the loss funding rate may be adjusted to maintain the Loss Fund at agreed-upon levels. As a general rule, a loss fund funding rate increase is mandatory if (a) there is a significant change in the collateral position or (b) after three consecutive months below the minimum required. Sunz monitors loss fund daily and provides monthly loss fund and stewardship reports.

vi. The Loss Fund Management Agreement states that (a) additional funds may be required and/or a loss funding rate increase may be required if the collateral requirements are not maintained, and (b) Sunz may transfer funds between policies, premium and collateral at any time to satisfy an outstanding obligation.

**2. CONFIDENTIALITY**

a. The parties acknowledge each party has and will become familiar with certain aspects of the business of the other party including, but not limited to, this Agreement, the terms and conditions of this Agreement, certain forms, documents, contracts and the method that services provided to each party's customers. These constitute trade secrets and confidential information, regardless of whether marked or designated "confidential" (collectively referred to herein as "Confidential Information").

b. Each party agrees it will use the Confidential Information disclosed to it only for its own internal uses and in connection with the performance of its duties and obligations under this Agreement. Each party agrees its officers, directors, employees and agents shall hold such Confidential Information in the strictest confidence and shall not voluntarily sell, transfer, publish, disclose, display or otherwise make available

to any third party any portion of such Confidential Information, except as may be necessary by reason of legal, accounting, regulatory or administrative requirements.

c. The parties agree that neither shall, during or after the term of this Agreement, disclose in any fashion, form, or manner, either directly or indirectly, any Confidential Information to any person or firm, entity, association or other entity for any reason or purpose whatsoever, unless specifically consented to in writing by the other party. The parties will further make every effort to ensure the confidentiality of such information.

d. Confidential or proprietary material shall not include any material or information that: (i) is at the time of disclosure, or thereafter becomes, through a source other than You or any of Your representatives, publicly known; or, (ii) is subsequently learned from a third party that does not impose an obligation of confidentiality on the recipient of such material; or (iii) was known to the recipient of such material at the time of disclosure; or (iv) can be demonstrated through competent written evidence to have been developed independently by the recipient of such material.

**3. CLAIM REPORTING OBLIGATIONS**

a. You agree to report all workplace accidents and injuries to Sunz within forty-eight (48) hours of when You knew, or in the normal course of business should have known, of the occurrence of such accident or injury.

b. You agree to cooperate with Sunz or as directed by Sunz in conducting any investigation related to the accident, including drug testing to the extent permissible by federal or state law, and any other post-accident review, that may be conducted prior to treatment unless injury is deemed to be life-threatening unless otherwise prohibited by state or federal law.

c. To the extent possible and using commercially reasonable efforts, You and Us agree to use our best efforts to protect and retain equipment or material necessary to pursue any potential subrogation opportunity.

**4. ELECTRONIC DELIVERY OF INSURANCE POLICY DOCUMENTS. This is a voluntary option for you to receive insurance policy documents electronically. You may opt out of this at your discretion and at any time. If you choose not to opt out, you hereby authorize Sunz to send You, by email, all insurance policy(ies), attachments thereto and all other documents relating to Your Insurance Program including, but not limited to, premium audit information, premium audit invoices, claims information, and similar matters. This applies to any and all policies You currently maintain with Sunz, prior policies, and all related policy documents. Sunz will send all policy and policy-related documents to an email address specified by You. You understand and agree Your consent shall remain in effect until withdrawn by You in writing.**

a. To "opt out" from receiving electronic delivery of insurance policy documents, or to report a change or correction in Your email address, please email the following address and set forth your request to "opt out" or otherwise provide corrective information: PolicyServicesDepartment@sunzinsurance.com.

b. To confirm your request to receive the electronic delivery of insurance policy documents, please sign below:

Sign: S. A________________

**5. PRODUCTION OF REQUESTED FINANCIAL MATERIALS**

It may become necessary for Sunz to review Financial Materials (defined below) relevant to Your company and Your Insurance Program. In the event such materials are requested, You agree to produce such Financial Materials, as of and for any period as required, without limitation or restriction, and promise that such Financial Materials contain truthful and accurate information. Where Sunz receives such Financial Materials from You it will maintain such materials as confidential and shall only use such materials for purposes related solely and exclusively to the matters contained in this Agreement. Sunz is entitled and authorized to disclose

Case 8:24-cv-00160-... Document 182-1 Filed 11/25/24 Page 61 of 141

Financial Materials to those employees, officers, agents, and advisers necessary to discharge their rights, duties, and obligations as set forth in this Agreement. Moreover, Sunz may need to disclose Financial Materials if, upon the advice of counsel, such disclosure must be made in order to comply with applicable law, regulation or judicial process. The obligations of non-disclosure set forth herein shall not apply to:

a. Financial Materials that at the time of disclosure are in the public domain;

b. Financial Materials which after production become generally available to the public by publication or otherwise through no fault of the recipient or any of its representatives;

c. Financial Materials that Sunz can demonstrate were already in the possession of Sunz or any representative and were not acquired by Sunz or any such representative, as the case may be, directly or indirectly from the disclosing party; and

d. Financial Materials the recipient can demonstrate through competent written evidence were developed independently without use of or reliance on the disclosed Financial Materials.

"Financial Materials" shall include, though not be limited to, Balance Sheet; Income Statements; Statement of Cash Flows; Auditors Opinion (if any); Notes to Financial Statements; Tax Returns; and Copies of applications and supporting materials filed to obtain licensure for Professional Employer Organization ("PEO") status. You agree to submit the following if requested:

- Copies of all quarterly and annual financial statements, whether audited or unaudited, within sixty (60) days of period close; and
- Written disclosure of all outstanding and unpaid tax obligations (either State or Federal) including notice of any and all tax liens (either State or Federal) that are filed against You, Your affiliates, subsidiaries, related entities, or general partners.

**6. FRAUD STATEMENT:**

Certain states request Sunz provide You with a statement of fraud. Please read the statement applicable to the state of Your address on Your insurance policy. If that state is not listed, please read the statement applicable to All Other States.

<u>Arkansas & West Virginia</u>: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

<u>California</u>: For your protection, California law requires the following to appear in this form. Any person who knowingly presents false or fraudulent information to obtain or amend insurance coverage or to make a claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

<u>Colorado</u>: It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

<u>District of Columbia</u>: WARNING: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

Florida: Any person who knowingly or with intent to injure, defraud or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

Louisiana: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit is guilty of a crime and may be subject to fines and confinement in prison.

Maine and Virginia: It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines and denial of insurance benefits.

Maryland: Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

Massachusetts: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and may subject the person to criminal and civil penalties.

Minnesota: A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime. Any person who, with intent to defraud, receives workers' compensation benefits to which the person is not entitled by knowingly misrepresenting, misstating, or failing to disclose any material fact is guilty of theft and shall be sentenced pursuant to section 609.52, subdivision 3.

New Mexico: ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES.

New York: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

Ohio: Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

Oklahoma: WARNING. Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete, or misleading information is guilty of a felony.

Oregon: Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or, (2) conceals for the purpose of misleading, information concerning any material fact, may have committed a fraudulent insurance act

Pennsylvania: Any person who, knowingly and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

Utah: Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison.

Vermont: Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

Washington: It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines, and denial of insurance benefits.

All Other States: Any person who knowingly and with intent to defraud any insurance company or another person files an application for insurance containing any materially false information, or conceals for the purpose of misleading information concerning any act material thereto, commits a fraudulent insurance act, which is a crime and subjects the person to criminal and civil penalties.

**7. DISPUTE RESOLUTION**.

a. This Agreement shall be governed solely by, and interpreted and construed exclusively in accordance with, the laws of the State of Florida without regard to the choice of law provisions thereof, and including, but not limited to, applicable statutes of limitation except as otherwise provided in this agreement. The prevailing Party in any proceeding arising out of or concerning this Agreement shall be entitled to reimbursement by the other Party of its reasonable costs and expenses, including, without limitation, court costs, attorney's fees, paralegal fees, expert witness fees, and other legal expenses incurred in connection with any such matter, whether in an arbitration, trial court, or appellate proceeding.

1. In the event of any controversy or claim arising out of or relating in any way to this Agreement or the breach or alleged breach hereof, each party irrevocably agrees to submit the matter to mediation, which mediation shall be a condition precedent to any demand for arbitration. Each party shall bear its own costs and expenses for mediation. The costs of the mediator shall be borne equally by each party. The parties shall confer and agree upon a mutual mediator.

2. In the event mediation does not resolve the matter, the parties shall submit the dispute to binding arbitration. The arbitration shall be administered and conducted by a single arbitrator selected by agreement between the parties. The party seeking arbitration shall submit a written demand for arbitration to the other party. If the parties cannot select an arbitrator within three (3) weeks of delivery of the written demand for arbitration, the party seeking arbitration shall request that the American Arbitration Association (AAA) identify a panel of arbitrators and oversee the selection process for the arbitrator, who must be an attorney with experience in the insurance field.

3. Any arbitration proceeding shall be initiated by the complaining party serving a written demand for arbitration upon the other party. The written demand shall contain a detailed statement of the matter and facts supporting the demand and include copies of all related documents. Arbitration shall be held in Bradenton, Florida.

4. The arbitration shall be conducted pursuant to the then-current AAA arbitration rules and shall be administered by the AAA. The arbitrator shall be required to apply the substantive law of the State of Florida. The arbitrator shall issue an award containing findings of fact and conclusions of law. The arbitrator shall have no authority to make an award which could not have been made by a court applying the substantive law of the State of Florida.

5. Any arbitration award shall be binding, not subject to appeal, and may be reduced to judgment in any Court having jurisdiction over the judgment debtor.

6. Any claim made related to this Agreement must be submitted on an individual basis only and the parties hereby waive the right to bring or join any type of collective or class claim in arbitration, in any court, or in any other forum. Sunz reserves all rights to seek to fully enforce this waiver and compel arbitration on an individual basis. Consolidation of claims absent consent of all the parties to the dispute is also prohibited. Any claims must be filed within the statute of limitations applicable to filing

such claim in court or in an administrative proceeding. All remedies available through a court or administrative action are available through arbitration.

b. You shall notify Sunz of any dispute regarding any amount payable under this Agreement and/or the settlement, adjustment, defense, or payment of any workers' compensation claim ("Claim Handling"), or any component thereof, represented by such billed amount through a written "Dispute Notice," which must be provided to Sunz within one hundred and eighty (180) calendar days after any payment is due. You agree that the failure to submit a written Dispute Notice timely to Sunz constitutes a waiver of any and all rights You may have had to bring any such dispute in any proceeding or forum. Said waiver shall include the waiver of any potential causes of action sounding in tort or contract for the alleged negligence, act(s), or omission(s) of Sunz or its affiliates.

If You dispute a Claim Handling billing in a Dispute Notice:

1. You shall provide Sunz with a brief statement of the dispute within thirty (30) days after submitting the Dispute Notice to Sunz;

2. You and SUNZ, each represented by individuals with decision-making authority, will promptly meet to attempt in good faith to negotiate a resolution;

3. The negotiation required by Paragraph 7(b)(2) is a condition precedent to any further consideration of Your Dispute Notice. If You and SUNZ are unable to negotiate a resolution as provided by Paragraph 7(b)(2), the parties shall submit the dispute to mediation as provided by Paragraph 7(a)(1), followed if necessary by arbitration Paragraph 7(a)(2) through (6).

4. If You seek to stop making any payment related to any disputed amount, You agree to either post a bond or establish for Sunz's benefit some other collateral reasonably acceptable to Sunz in an amount equal to the amount of disputed payment.

c. <u>Confirmation of Arbitration and Confirmation of Choice of Law</u>

1. The Parties have negotiated and agreed that Your Insurance Program is deemed made in the State of Florida and involves interstate commerce. The choice of arbitration law negotiated pursuant to California Insurance Code section 11658.5 is the laws of the State of Florida.

2. Any arbitration shall take place in Florida unless the Parties mutually agree in writing to an alternative site. The choice of arbitration venue negotiated pursuant to California Insurance Code section 11658.5 is Bradenton, Florida.

3. Program Owner acknowledges Sunz provided it with a "NOTICE OF DISPUTE RESOLUTION TERMS TO BE INCLUDED IN CERTAIN AGREEMENTS PURSUANT TO CALIFORNIA INSURANCE CODE SECTION 11658.5" and the terms of this Agreement reflect the final agreement of Program Owner and Sunz relating to the resolution of disputes under this Agreement.

4. For purposes of California, no claim coming within the authority of the Insurance Commissioner shall be subject to arbitration.

**8. LOSS CONTROL SERVICES**

It is SUNZ's responsibility to maintain and provide safety and health loss control consultation services to Program Owner. Sunz assists in evaluating risk management infrastructure and loss control capabilities, providing loss control resources via risk assessment, web-based and electronic data, telephonic and email support. In providing these loss control services, Sunz may act in an advisory and consultative capacity. Sunz retains the sole right to determine where to act on or implement the information, recommendations, and the way any such action or implementation shall be undertaken. If any additional services are desired, You can purchase additional services on an hourly rate or other fee arrangement basis, as agreed upon mutually. Sunz will comply with applicable state laws and regulations regarding the Loss Control Services.

**9. COST CONTROL / CONTAINMENT SERVICES**

Next Level Administrators, LLC ("NLA"), the claim administrators for the insurance company, will deploy additional services as NLA believes are necessary in its discretion for the correct adjudication and resolution of the claim. These cost control and cost containment services are as follow:

**a. Telephonic and Field Nurse Case Management Services**

In certain situations, the NLA claims adjuster may determine that field or telephonic nurse case management is necessary to the claim. Typically, the adjuster will decide to obtain nurse case management assistance where medical issues confronting the claim are complex or otherwise intricately related with the claim administration process.

The following criteria will generally be utilized to determine if telephonic or field nurse case management intervention is indicated:

**Diagnosis:**

- Amputations
- Back or neck injuries
- Burns - Second and third-degree burns, or significant inhalation burn
- Comorbidities (Diabetes Mellitus, Obesity, Coronary Heart Disease, HIV/AIDS, Substance / Alcohol Abuse, Epilepsy, Hypertension)
- Crush injuries
- Fractures not resolved in 6 weeks
- Head injuries
- Hearing loss
- Hernias not resolved in 6 weeks
- Inhalation or Toxic exposure
- Knee injuries
- Lacerations, which involve tendons
- Medical complications or dual diagnoses
- Multiple trauma/crush injury - To include gunshot wounds and multiple fractures
- Tendon / ligament injuries worse than strains/sprain [i.e. tears / ruptures]
- Repetitive motion injuries, including Carpal tunnel syndrome
- Upper extremity injuries, especially shoulder
- Vision loss-or eye injuries, with ophthalmology referral

**Disability Indicators:**

- Injury occurs when injured employee on job < 90 days
- Lost time greater than 10 days, [except hernia repairs and minor fractures]
- Previous WC claims

**Complications:**

- All hospitalizations at time of injury
- Assault
- Evidence of psychological, social, or psychiatric problems regardless of severity of injury
- Pain Management has been referred
- Physical therapy or chiropractic treatment greater than 3 months
- Projected surgery
- Any case mutually agreed upon with the adjuster to be catastrophic in nature or high medical cost

**b. SIU / Investigations**

From time to time, NLA will retain SIU and investigation services on files or matters NLA deems investigatory services are required. Investigation Services shall be performed in three different categories: Digital Intelligence Unit, Field Investigation Unit, and Fraud/Compliance Unit.

- SIU Snapshot. This is a service NLA provides to identify potential fraud or other "bad acts" in every claim immediately when the claim is reported. It is a pre-pay anti-fraud service to identify where

further review is necessary. The investigators review for claim completeness, discrepancies and/or non-compliance issues, suspected insurance fraud, and other front-line indicators present in fraudulent claims. SIU Snapshot also contains a digital investigation component as NLA will be able to identify, protect, and preserve on-line information and social media data before it can be removed or otherwise altered. SIU Snapshot is a pre-pay fraud prevention program that attempts to identify those fraudulent claims and earmark further investigation before claims money is paid out.

- The adjuster will engage special investigation services to a claim where the adjuster believes such services are necessary. An example of some of the circumstances or "red flags" that may lead an adjuster to use SIU services:
  - Information obtained during initial SIU Snapshot review suggests a need for further investigative efforts;
  - Excessive medical treatment for a minor injury or other such overutilization of benefits or services;
  - Attorneys who refer all clients to the same doctors or same healthcare provider;
  - Repeated medical billing errors – for example, where two healthcare providers in different locations seeing the claimant at the same time or medical treatment provided when the claimant's time card shows the claimant was at work at the time of treatment;
  - Information obtained indicates the claimant is working elsewhere while accepting indemnity benefits;
  - Source(s) provide a different version of the accident than the claimant;
  - Information is received showing the accident happened away from work or is not work related;
  - Where the adjuster believes the claim involves potential fraud or abuse of the workers compensation system.

**10. <u>MISCELLANEOUS</u>**

a. <u>Integration Clause</u>. This Agreement, including the Loss Fund Management Agreement, Guaranty, Security Agreement and any amendments thereto, constitutes the final, complete, and exclusive statement of the terms of the Agreement between the parties pertaining to the subject matter of this Agreement and supersedes all prior and contemporaneous understanding(s) or Agreement(s) of the parties whether in written or oral form. It is to be read, understood, and interpreted in conjunction with the concurrent Loss Fund Management Agreement.

b. <u>Modification</u>. This Agreement may be changed only by agreement between the parties, as evidenced by a written addendum to this Agreement, duly executed and signed by the authorized representatives of each party.

c. <u>Third Party Benefit</u>. Nothing in this Agreement, except as expressly stated herein, is intended to create any benefit for any third party.

d. <u>Severability</u>. If any clause, paragraph, term, or provision of this Agreement is held or declared void or otherwise unenforceable by any arbitrator, court or other tribunal of competent jurisdiction, the same shall be deemed severed, and such holding or declaration shall have no effect upon this Agreement which shall otherwise continue in and be given full force and effect.

e. <u>Survival</u>. The obligations and duties of the parties to this Agreement shall survive the termination of Your Insurance Program, except as may be specifically described in this Agreement.

f. Non-Waiver. Forbearance, neglect or failure by Sunz to enforce any provision of this Agreement shall not be construed as a waiver of any rights or privileges hereunder. Irrespective of the fact that past behavior did not precipitate strict adherence to the terms and conditions of this Agreement, the terms and conditions of this Agreement may be strictly enforced at any time.

g. Assignment. Neither this Agreement nor any rights, duties or obligations under this Agreement may be assigned or delegated by either party without the prior written consent of the other party, which consent may be withheld in the party's sole discretion.

h. Notification. All notices hereunder must be in writing, unless specified otherwise, and shall be deemed to have been duly given if delivered by hand or overnight mail or if mailed first class or certified mail, return receipt requested, postage and registry fees prepaid, and addressed as follows:

**If to YOU**:

| | |
|---|---|
| Name of Company: | Embraceor, LLC |
| Address: | 1900 Reston Metro Plaza, Suite 600 |
| City, State ZIP Code | Reston, VA 20190 |
| Attention: | Sheldon Altschuler |
| Email Address: | sheldon@workcentric.com |

**If to Sunz**:
Sunz Insurance Solutions, LLC
1301 6th Avenue West
Bradenton, FL 34205
Toll Free Phone: 844-786-9467
Attention: General Counsel

Addresses may be changed by written notice to the other party signed by the addressee. Written notice provided via first class or certified mail shall be deemed received three (3) calendar days after the date it was sent, overnight mail shall be deemed received the day after it was sent, and hand-delivered notice shall be deemed received the date it was delivered. In the event original service of process is sought to be given, notice may only be accomplished by personal service upon the registered agent for service of process for the party.

i. Negotiated Agreement. This Agreement has been negotiated by the parties and the fact that the initial and final draft shall have been prepared by Sunz shall not be used in any form in the construction or interpretation of this Agreement or any of its provisions.

j. Headings. The headings used have been inserted for convenience and do not constitute matters to be construed or interpreted in connection with this Agreement.

k. [Omitted].

l. Each party will have a duty to cooperate with the other in the event of any inquiry or investigation by a governmental agency investigating a complaint brought by any employer covered under this Agreement. Such duty will survive the termination of this Agreement. Program Owner agrees to cooperate with Sunz as needed for any State licensing and/or registration requirements. Program Owner further agrees to cooperate with Sunz as needed for compliance with any additional State statute, regulation, or other requirement not aforementioned or referenced above or below. Such duties will survive the termination of this Agreement.

m. No party shall be liable in damages for any failure, delay or default in the performance of its obligations hereunder if such failure, delay or default is caused directly or indirectly by conditions beyond its

reasonable control including, but not limited to, fire, flood or any other "Acts of God", and/or any other cause beyond the reasonable control of the party whose performance is affected.

n. Remedies Cumulative. The rights and remedies, as provided herein, in relevant statutes, and in related insurance policies, shall be cumulative and concurrent, may be pursued separately, successively or together, may be exercised as often as occasion therefore shall arise, and shall be in addition to any other rights or remedies conferred at law or in equity. The failure, at any one or more times, of any party to exercise any such right or remedy shall in no event be construed as a waiver or release thereof.

***[Signatures on Following Page]***

***ACKNOWLEDGED, AGREED TO AND ACCEPTED: January 1, 2023***

| **Embraceor, LLC; WorkCentric, LLC; WorkCentric 2, LLC; and WorkCentric 3, LLC** | **SUNZ INSURANCE SOLUTIONS, LLC and SUNZ INSURANCE COMPANY** |
|---|---|
| [sign] (signature) | DocuSigned by: Rick Leonard (signature) AF395F242B28447... |
| By: Sheldon Altschuler | By: Rick Leonard |
| Title: President | Title: President |

**Attachment Clause on Following Page**

## Attachment Clause

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

| | | |
|---|---|---|
| Endorsement Effective | Policy No. | Endorsement No. |
| Insured | Insurance Company | |

Countersigned by ______________________________

**Amendment to Quotation Agreement**

This Amendment modifies and amends the Quotation Agreement (the "Agreement") between SUNZ Insurance Company ("SIC"); SUNZ Insurance Solutions, LLC ("SIS"); and the Program Owners. SIC, SIS, and Program Owners shall be referred to collectively as "The Parties."

The Parties and UWIC agree as follows:

1. This Amendment is effective and binding between the Parties as of the date set forth below and continues in force until terminated in writing by the Parties and United Wisconsin Insurance Company ("UWIC").

2. Only in regard to those polices listed on the Program Summary as issued by UWIC, UWIC is hereby added as a direct party to the Agreement and not as a third-party beneficiary. Only in regard to those polices listed on the Program Summary as issued by UWIC, UWIC hereby has the identical rights under the Agreement as SIC and SIS, without reservation or limitation of any kind.

3. At all times, any amounts owed and/or collected pursuant to the Agreement regard to those polices listed on the Program Summary as issued by UWIC are the property of UWIC subject to Program Owner's right under the Agreement. All funds owed and/or collected pursuant to the Agreement regard those polices listed on the Program Summary as issued by UWIC are held by SIS or SIC in trust for the benefit of UWIC subject to Program Owner's rights under the Agreement.

4. SIS and SIC are fiduciaries of UWIC with respect to the accounting, collection and disbursement of all funds received pursuant to the Agreement regard to those polices listed on the Loss Fund Summary as issued by UWIC.

5. Notwithstanding any of the above, SIS and SIC retain all rights and obligations to directly enforce the Agreement. The Agreement is otherwise unchanged and remains in full force and effect.

In Witness Whereof, the parties hereto by their respective duly authorized representatives execute this Amendment.

Signature Page and Program Summary Terms on Following Page

***ACKNOWLEDGED, AGREED TO AND ACCEPTED: January 1, 2023***

**Embraceor, LLC; WorkCentric, LLC; WorkCentric 2, LLC; and WorkCentric 3, LLC**

[sign] S. A.

By: Sheldon Altschuler

Title: President

**SUNZ INSURANCE SOLUTIONS, LLC and SUNZ INSURANCE COMPANY**

DocuSigned by: Rick Leonard
AF395F242B28447...

By: Rick Leonard

Title: President

**United Wisconsin Insurance Company**

[sign] DocuSigned by: Eric Halter
EFDF0F6D5668479...

By: Eric Halter

Title: Managing Dir. / AF Specialty

# PROGRAM SUMMARY & TERMS

| | |
|---|---|
| **Insurance Company** | United Wisconsin Insurance Company (UWIC) |
| **Program Type** | $500,000 Per Accident Deductible |
| **State(s) Covered at Bind** | All states as approved by underwriting |
| **Contingency** | Signed Quotation, Signed Loss Fund Management Agreement, Signed Notice of Dispute Resolution and Client Acknowledgement, Funds Due at Bind, Signed Claims Agreement, Signed Program Values Schedule, Signed Large Risk Program Agreement, and Acceptable Background Check |
| **Aggregate Limit** | N/A |
| **Coverage** | Workers' Compensation |
| **Limits of Coverage** | Workers' Compensation – Statutory Employers Limits |
| | Bodily Injury by Accident — $1,000,000 Each Accident |
| | Bodily Injury by Disease — $1,000,000 Policy Limit |
| | Bodily Injury by Disease — $1,000,000 Each Employee |
| **Waiver of Subrogation** | Varies by State |
| **Alternate Employer Endorsement** | No Charge |

| **Deductible – per accident** | **$500,000** |
|---|---|
| Estimated Payroll | $1,701,821,022 |
| Estimated Manual Premium | $43,571,126 |
| Submit Rate as a Percent of Manual Premium | 33.50% of Manual Premium |
| Estimated Annual Deductible Premium | $14,596,327 |
| Estimated Annual Taxes / Surcharges / Assessments | $2,683,988 |
| Loss Fund | 66.00% of Manual Premium |
| *Estimated Payroll – WI | $16,921,165 |
| *Estimated Premium – WI | $344,402 |
| *Estimated Earned Premium – WI | $445,235 |
| **Due at Binding** | **$0** |
| **Estimated Post Bind Funding** | |
| Est. Weekly Premium Installments as a % of Manual Premium | 33.50% of Manual Premium |
| Est. Weekly Loss Fund Installments as a % of Manual Premium | 66.00% of Manual Premium |
| **Est. Total Weekly Funding (as a % of Manual Premium)** | 99.50% of Manual Premium |
| **Deductible Reimbursement Payments: Will be deducted from Loss Fund** | |

# EXHIBIT B

SUNZ INSURANCE

# 2023

# Loss Fund Management Agreement

Presented to:

# Embraceor, LLC

Effective Date of Agreement: January 1, 2023

## LOSS FUND SUMMARY

**Insurance Company:** **SUNZ INSURANCE COMPANY**

| | |
|---|---|
| Estimated Manual Premium | $8,833,365 |
| Loss Fund | 66.00% of Manual Premium |
| Loss Fund Deposit | $0 |
| **Due at Binding** | **$0** |
| **Estimated Post Bind Funding:**<br>Est. Weekly Loss Fund Installments as a % of Manual Premium | 66.00% of Manual Premium |
| **Deductible Reimbursement Payments:** | **Will be deducted from Loss Fund** |

| | |
|---|---|
| **Program Owners & Insureds**[1] | Embraceor, LLC; WorkCentric, LLC; WorkCentric 2, LLC; and WorkCentric 3, LLC |
| **Program Owner Address** | 1900 Reston Metro Plaza, Suite 600, Reston, VA 20190 |
| **Program Effective Date** | January 1, 2023 |

These binding terms and conditions constitute Your Loss Fund Management Agreement ("Agreement") and sets forth Your loss fund payment obligations related to Your deductible workers' compensation insurance policy ("Your Insurance Program"). The terms You or Your shall mean Program Owners as defined above.

Sunz Insurance Solutions, LLC ("Sunz") has been appointed the Managing General Agent ("MGA") by Sunz Insurance Company.

This Agreement shall become effective as of the Program Effective Date set forth above.

This Agreement is based solely on information and data You provided to us. You should inform Sunz promptly of any deficiencies identified in Your Insurance Program so an effort can be made to address them. Sunz will not be responsible for any such deficiencies. If there is any further or additional information relevant to the matters contained in this agreement, please make sure to provide those to Sunz so this Agreement reflects accurately all relevant information.

If any term or condition in this Agreement contradicts or is inconsistent with a stated term or listed condition in an insurance policy, the term or condition of the insurance policy will prevail.

**Adjustment Basis:**

Your loss fund will be a percentage of manual premium that will be determined in accordance with the approved rating plan and policy (the "Loss Fund").

**Payroll Reporting Obligations:**

For purposes of calculating the Loss Fund, weekly or monthly submission of Your payroll on a timely basis depending on our agreement, is a mandatory condition of Your Insurance Program. Failure to submit payroll as Sunz requires and as we agreed shall be deemed a breach of this Agreement

Sunz does not provide legal or accounting advice, You have not relied on any such information from Sunz, and You have relied on Your personal legal, insurance and accounting consultants in reviewing and accepting Your Insurance Program. Further, You agree You will, in all regards, seek the advice and opinion of Your own attorneys, accountants, and consultants in the administration of Your Insurance Program.

These terms and conditions that govern your Loss Fund obligations apply to the entirety of Your Insurance Program.

## A. GENERAL CONDITIONS AND DEFINITIONS

This Agreement is made as of the Program Effective Date. This Agreement is binding and effective as between You and Sunz Insurance Solutions, LLC. You agree Your duties and obligations under this Agreement are joint and several in nature by, between, and among the Program Owners.

[1] Included as a "Program Owner" shall be any subsequent entity endorsed as an additional named insured to any insurance policy(ies) where such subsequent entity, under NCCI's experience rating plan or the experience rating plan of the applicable rating bureau, may be deemed combinable with the listed Program Owners set forth herein.

Loss Fund is a mandatory part of this insurance program. Failure to pay Loss Fund as required shall be considered a material misrepresentation that may result in cancellation of your insurance policies.

1. Definitions

   The following terms have a special meaning in this Agreement and in Your Insurance Program. All defined terms should be equally applicable to both the singular and plural of any of the terms herein defined.

   a. Allocated Loss Adjustment Expense ("ALAE") is as defined in the filed and approved large deductible endorsement(s) that forms a part of Your Insurance Program.

   b. Claim is defined as set forth in the large deductible endorsement that forms a part of Your Insurance Program.

   c. Loss Fund is defined as security for Your Obligations that You are required to provide to Sunz pursuant to this Agreement and which is acceptable to Sunz in form, content, issuer and amount.

   d. Loss or Losses is defined as set forth in the large deductible endorsement that forms a part of Your Insurance Program.

   e. Outstanding Loss Reserves is defined as set forth in the large deductible endorsement that forms a part of Your Insurance Program.

   f. Paid Losses is defined as set forth in the large deductible endorsement that forms a part of Your Insurance Program.

   g. Parties refers to You and Sunz collectively, and Party refers to either You or Sunz individually as the case may be.

   h. Sunz means Sunz Insurance Solutions, LLC.

   i. Ultimate Incurred Losses is defined as set forth in the large deductible endorsement that forms a part of Your Insurance Program.

   j. You and Your mean and include the Program Owners set forth above and each of Program Owners' affiliates, divisions, subsidiaries, general partners and/or limited partners who are a named insured on any insurance policy issued pursuant to this Insurance Program.

   k. Your Obligations are set forth in the large deductible endorsement that forms a part of Your Insurance Program.

2. Collection Costs and Damages: Within ten (10) days of demand for payment, you shall reimburse Sunz for any and all costs and expenses, including, but not limited to, attorneys' fees incurred by Sunz in connection with the collection or enforcement of any of Your Obligations to Sunz. In addition, with respect to any of Your Obligations to Sunz that remain outstanding beyond a stated due date, You agree Sunz may charge You interest on that obligation. If Sunz chooses to exercise this option, interest shall accrue daily at the prime rate of interest plus 200 basis points in effect daily at J. P. Morgan Chase & Co, 270 Park Avenue, New York City, New York 10017-2070, though such interest shall not exceed the highest rate allowed by law, from the date of our demand for payment until the date Sunz receives payment in full.

3. Payment Terms: You agree to pay each bill, invoice or request for Loss Fund submitted to You in accordance with the payment terms set forth in such bill, invoice or request for payment. If no payment terms are stated on such bill, invoice, or request for payment, such payment shall be due within ten (10) days of the date of such bill, invoice, or request for payment.

4. Right of Offset: Sunz may offset any balance due by You under this Agreement against any of Your funds Sunz holds whether or not any demand was made under this Agreement.

5. [omitted]

6. Default:

   a. Default occurs when You fail to perform within ten (10) days after its due date any obligation You have to Sunz. Default may also arise upon the occurrence of any of the following:

      1. The commencement of liquidation or dissolution proceedings, Your general failure to pay debts as they become due, Your insolvency, general assignment by You for the benefit of creditors, the filing by or against You of any petition, proceeding, case or action under the provisions of the United States Bankruptcy Code or other such law relating to debtors, the appointment of, or the voluntary or involuntary filing for a petition for the appointment of, a receiver, liquidator, rehabilitator, trustee, custodian or similar official to take possession or control of any of Your property; or

      2. Failure to pay any amount when due arising under this Agreement including Your obligation to maintain the Loss Fund as set forth in this Agreement; or

      3. Failure to perform any obligation or to satisfy any requirement as established by Sunz under this Agreement; or

      4. Failure to deliver the Loss Fund within the time period specified or failure to continue to maintain the Loss Fund or any renewal, replacement, supplement or amendment thereof as required under this Agreement; or

      5. Your making a misrepresentation to, or breaching any representation You have made, either orally or in writing, to Sunz, including the submission of inaccurate or intentionally misleading information; or

      6. The discovery of any material inaccuracy or incompleteness in any representation, warranty or condition precedent You make in connection with this Agreement or any payment obligation You may have under this Agreement; or

      7. You undertake to pay claim expenses, including attorneys' fees or healthcare expenses, directly on claims that have not been reported.

   b. If default occurs, Sunz may take reasonable and appropriate steps necessary to protect its interest, including but not limited to the following:

      1. Declare the entire unpaid amount of any payment obligation immediately due and payable; or

      2. Draw upon, liquidate, or take ownership of any or all of the Loss Fund, escrow funds amount, collateral, or any money Sunz holds regardless of the form, and hold or apply such amounts to any of Your payment obligations under this Agreement. However, Sunz will not draw upon, liquidate, or take ownership of more than reasonably necessary to protect Sunz' interest or recover the amount owed; or

      3. Require You to deliver to Sunz additional Loss Fund, escrow funds amount, or money, including any amendment to any letter of credit or an additional letter of credit or other additional Loss Fund. Such other and additional Loss Fund shall be paid in cash. You must deliver payment to Sunz within ten (10) days of Your receipt of a written notice from Sunz; or

      4. Where permitted by law, cancelling any Insurance Policy issued pursuant to Your Insurance Program.

   c. Default occurring under Section 6(a) may be cured, as determined by SUNZ in its sole discretion, within the following cure periods:

      1. Ten (10) calendar day cure period, from the date of default, for the non-payment of funds due; or

      2. Thirty (30) calendar day cure period, from the date of default, for all other matters.

7. Miscellaneous:

a. Integration Clause. This Agreement, including the Quotation Agreement, Guaranty, Security Agreement and any amendments thereto, constitutes the final, complete, and exclusive statement of the terms of the Agreement between the parties pertaining to the subject matter of this Agreement and supersedes all prior and contemporaneous understanding(s) or Agreement(s) of the parties whether in written or oral form. It is to be read, understood, and interpreted in conjunction with the concurrent Quotation Agreement.

b. Modification. This Agreement may be changed only by agreement between the Parties, as evidenced by a written addendum to this Agreement, duly executed and signed by the authorized representatives of each Party.

c. Third Party Benefit. Nothing in this Agreement, except as expressly stated herein, is intended to create any benefit for any third party.

d. Severability. If any clause, paragraph, term, or provision of this Agreement is held or declared void or otherwise unenforceable by any arbitrator, court or other tribunal of competent jurisdiction, the same shall be deemed severed, and such holding or declaration shall have no effect upon this Agreement which shall otherwise continue in and be given full force and effect.

e. Survival. The obligations and duties of the parties to this Agreement shall survive the termination of Your Insurance Program, except as may be specifically described in this Agreement.

f. Non-Waiver. Forbearance, neglect or failure by Sunz to enforce any provision of this Agreement shall not be construed as a waiver of any rights or privileges hereunder. Irrespective of the fact that past behavior did not precipitate strict adherence to the terms and conditions of this Agreement, the terms and conditions of this Agreement may be strictly enforced at any time.

g. Assignment. Neither this Agreement nor any rights, duties or obligations under this Agreement may be assigned or delegated by either Party without the prior written consent of the other Party.

h. Notification. All notices hereunder must be in writing, unless specified otherwise, and shall be deemed to have been duly given if delivered by hand or overnight mail or if mailed first class or certified mail, return receipt requested, postage and registry fees prepaid, and addressed as follows:

**If to YOU**:

| | |
|---|---|
| Name of Company: | Embraceor, LLC |
| Address: | 1900 Reston Metro Plaza, Suite 600 |
| City, State ZIP Code | Reston, VA 20190 |
| Attention: | Sheldon Altschuler |
| Email Address: | sheldon@workcentric.com |

**If to Sunz**:
Sunz Insurance Solutions, LLC
1301 6th Avenue West
Bradenton, FL 34205
Attention: General Counsel

Addresses may be changed by written notice to the other Party signed by the addressee. Written notice provided via first class or certified mail shall be deemed received three (3) calendar days after the date it was sent, overnight mail shall be deemed received the day after it was sent, and hand-delivered notice shall be deemed received the date delivered. In the event original service of process is sought to be given, notice may only be accomplished by personal service upon the registered agent for service of process for the party.

i. Negotiated Agreement. This Agreement has been negotiated by the Parties and the fact that the initial and final draft shall have been prepared by Sunz shall not be used in any form in the construction or interpretation of this Agreement or any of its provisions.

j. Headings. The headings used have been inserted for convenience and do not constitute matters to be construed or interpreted in connection with this Agreement.

k. [Omitted]

l. Each Party will have the duty to cooperate with the other in the event of any inquiry or investigation by a governmental agency investigating a complaint brought by any employer covered under this Agreement. Such duty will survive the termination of this Agreement. Program Owner agrees to cooperate as needed for any State licensing and/or registration requirements. Program Owner further agrees to cooperate as needed for compliance with any additional State statute, regulation, examination, enforcement, or other requirement not aforementioned or referenced above or below. Such duties will survive the termination of this Agreement.

m. No Party shall be liable in damages for any failure, delay or default in the performance of its obligations hereunder if such failure, delay or default is caused directly or indirectly by conditions beyond its reasonable control including, but not limited to, fire, flood or any other "acts of God", and/or any other cause beyond the reasonable control of the Party whose performance is affected.

n. Remedies Cumulative. The rights and remedies, as provided herein, in relevant statutes, and in related insurance policies, shall be cumulative and concurrent, may be pursued separately, successively or together, may be exercised as often as occasion therefore shall arise, and shall be in addition to any other rights or remedies conferred at law or in equity. The failure, at any one or more times, to exercise any such right or remedy shall in no event be construed as a waiver or release thereof. Sunz shall have the right to take any action deemed appropriate without the necessity of resorting to any collateral securing obligations owed to it under this Loss Fund Management Agreement or any related insurance policy issued to Program Owners.

8. Dispute Resolution: This Agreement shall be governed solely by, and interpreted and construed exclusively in accordance with, the laws of the State of Florida, without regard to the choice of law provisions thereof, and including, but not limited to, applicable statutes of limitation except as otherwise provided in this agreement. The prevailing Party in any proceeding arising out of or concerning this Agreement shall be entitled to reimbursement by the other Party of its reasonable costs and expenses, including, without limitation, court costs, attorney's fees, paralegal fees, expert witness fees, and other legal expenses incurred in connection with any such matter, whether in an arbitration, trial court, or appellate proceeding.

   a. In the event of any controversy or claim arising out of or relating in any way to this Agreement or the breach or alleged breach hereof, each Party irrevocably agrees to submit the matter to mediation, which mediation shall be a condition precedent to any demand for arbitration. Each Party shall bear its own costs and expenses for mediation. The costs of the mediator shall be borne equally by each Party. The Parties shall confer and agree upon a mutual mediator.

   b. In the event mediation does not resolve the matter, the Parties shall submit the dispute to binding arbitration. The arbitration shall be administered and conducted by a single arbitrator selected by agreement between the Parties. The Party seeking arbitration shall submit a written demand for arbitration to the other Party. If the Parties cannot select an arbitrator within three (3) weeks of delivery of the written demand for arbitration, the Party seeking arbitration shall request that the American Arbitration Association (AAA) identify a panel of arbitrators and oversee the selection process for the arbitrator, who must be an attorney with experience in the insurance field.

   c. Any arbitration proceeding shall be initiated by the complaining Party serving a written demand for arbitration upon the other Party. The written demand shall contain a detailed statement of the matter and facts supporting the demand and include copies of all related documents. Arbitration shall be held in Bradenton, Florida.

d. The arbitration shall be conducted pursuant to the then-current AAA arbitration rules and shall be administered by the AAA. The arbitrator shall be required to apply the substantive law of the State of Florida. The arbitrator shall issue an award containing findings of fact and conclusions of law. The arbitrator shall have no authority to make an award which could not have been made by a court applying the substantive law of the State of Florida.

e. Any arbitration award shall be binding, not subject to appeal, and may be reduced to judgment in any Court having jurisdiction over the judgment debtor.

f. Any claim made related to this Agreement must be submitted on an individual basis only and the parties hereby waive the right to bring or join any type of collective or class claim in arbitration, in any court, or in any other forum. Sunz reserves all rights to seek to fully enforce this waiver and compel arbitration on an individual basis. Consolidation of claims absent consent of all the parties to the dispute is also prohibited. Any claims must be filed within the statute of limitations applicable to filing such claim in court or in an administrative proceeding. All remedies available through a court or administrative action are available through arbitration.

g. For purposes of California, and pursuant to CA Insurance Code §11658.5 (2012), nothing in this section is intended to interfere with any authority granted to the Insurance Commissioner of the State of California.

9. Confirmation of Arbitration and Confirmation of Choice of Law

a. The Parties have negotiated and agreed that Your Insurance Program is deemed made in the State of Florida and involves interstate commerce. The choice of arbitration law negotiated pursuant to California Insurance Code section 11658.5 is the laws of the State of Florida.

b. Any arbitration shall take place in Florida unless the Parties mutually agree in writing to an alternative site. The choice of arbitration venue negotiated pursuant to California Insurance Code section 11658.5 is Bradenton, Florida.

c. Program Owner acknowledges Sunz provided it with a "NOTICE OF DISPUTE RESOLUTION TERMS TO BE INCLUDED IN CERTAIN AGREEMENTS PURSUANT TO CALIFORNIA INSURANCE CODE SECTION 11658.5" and the terms of this Agreement reflect the final agreement of Program Owner and Sunz relating to the resolution of disputes under this Agreement.

d. For purposes of California, no claim coming within the authority of the Insurance Commissioner shall be subject to arbitration.

## B. LOSS FUND ADMINISTRATION SECTION

This Loss Fund Administration Section ("Section") addresses the Parties' understanding and Agreement specific to how the Loss Fund for Your Insurance Program will be administered.

Your Insurance Program depends on Your provision and ongoing maintenance of a Loss Fund. Your promise to provide for and maintain the Loss Fund is a condition precedent to the issuance of any insurance policy and is a requirement of Your Insurance Program. Thus, Your provision and maintenance of the Loss Fund constitutes further action that is necessary and desirable to carry out the purposes of Your Insurance Program.

Sunz has the sole and unfettered discretion to access the full amount of the Loss Fund and to make use of the full amount of the Loss Fund, as Sunz may determine in its sole discretion, for any purpose related to Your Insurance Program.

1. Loss Fund Maintenance

a. Your initial Loss Fund Deposit, to be paid at inception of this Agreement, is set forth above in the Program Summary and Terms.

b. You agree to maintain a Loss Fund at all times during the Insurance Program. Your Loss Fund or Minimum Loss Fund shall be the combined amounts of (a) two hundred percent (200%) of open case reserves plus (b) one hundred percent (100%) of the per accident Deductible Amount under the policy.

c. If Sunz, in its sole discretion, deems there is a material change in the loss experience or risk of Your Insurance Program, Sunz may require, and You agree to provide, additional Loss Fund in an amount set to fully developed loss using the then current advisory loss development factors as established by either (a) the National Council on Compensation Insurance (NCCI), or (b) the applicable rating bureau.

d. The Parties agree that all Loss Fund payments must be in accordance with the terms provided for herein in order for Sunz to continue to provide the Insurance Policy(ies) related to Your Insurance Program.

e. Your obligation to maintain the Loss Fund shall be an ongoing obligation.

f. All Loss Fund payments shall be made by You in cash.

g. At the end of each month, amounts will be deducted from the Loss Fund in accordance with the provisions of the large deductible endorsement to the policy(ies) that form a part of Your Insurance Program.

2. Minimum Loss Fund Amount

a. Your Loss Fund must be maintained at the necessary amount at all times throughout the term of Your Insurance Program. If the Loss Fund at any time is less than the Minimum Loss Fund, You agree to increase the Loss Fund in the amount necessary to bring the Loss Fund to the required minimum. This also means possibly increasing your Loss Fund funding rate which is set as a percentage of manual premium in order to avoid Loss Fund from falling below minimum levels if your losses are trending unfavorably.

b. In the event You receive written notice to increase the Loss Fund, You agree to deliver, within ten (10) business days of the date of written notice, that amount of money necessary to replenish and return the Loss Fund amount to the required minimum amount.

c. The cancellation of the Insurance Policy(ies) by either You or Sunz will not terminate or otherwise limit the duties and obligations contained in this Agreement.

d. The cancellation of the Insurance Policy(ies) by either You or Sunz shall result in the Minimum Loss Fund being set to fully developed loss using the then current incurred advisory loss development factors as established by either (a) the National Council on Compensation Insurance (NCCI), or (b) the applicable rating bureau.

e. If, without Sunz's prior written consent, You sell all or substantially all Your assets, or you terminate or non-renew Your Insurance Program, the Minimum Loss Fund amount shall be set by Sunz, at its sole discretion, to either (1) amounts established by its independent actuary, or (2) fully developed loss using the then current advisory loss development factors as established by either (a) the National Council on Compensation Insurance (NCCI), or (b) the applicable rating bureau.

3. Loss Fund Applicability: The Parties agree that any Loss Fund provided by Program Owner in accordance with this Agreement may be applied against losses and premium incurred during any policy year as SUNZ may decide to apply at its sole discretion.

4. Loss Fund Return

a. Once Your relationship with Sunz has come to an end and no more workers' compensation insurance policies will be provided, Sunz will return excess Loss Fund beginning eighteen (18) months after the inception date of each policy. This shall apply to all Loss Fund held for all insurance policies issued in all states. At its sole discretion, Sunz may return excess loss fund using one of two methods: (1) based on an actuarial review by its independent appointed actuary, or (2) based on the most current advisory loss development factors as established by either (a) the National Council on Compensation Insurance (NCCI), or (b) the applicable rating bureau, as applied against total case incurred losses and ALAE on all policies issued by Sunz for all time, at the following intervals:

**Months After Policy Inception**

18, 30, 42, 54, 66, 78, 90, 102, 114, and 126

Excess loss fund identified shall be returned to Program Owners within thirty (30) days after period close.

b. As conditions precedent to the return of Loss Fund, the following requirements must be satisfied: (1) all policy years on all policies issued by Sunz must have sufficient Loss Fund based on the terms and conditions of Your Insurance Program; (2) all premium audits must be completed and finalized; and (3) You must be in good standing and not in breach of any term or condition of the Agreement.

***ACKNOWLEDGED, AGREED TO AND ACCEPTED: January 1, 2023***

| **Embraceor, LLC; WorkCentric, LLC; WorkCentric 2, LLC; and WorkCentric 3, LLC** | **SUNZ INSURANCE SOLUTIONS, LLC and SUNZ INSURANCE COMPANY** |
|---|---|
| [sign] S. A— | DocuSigned by: Rick Leonard AF395F242B28447... |
| By: Sheldon Altschuler | By: Rick Leonard |
| Title: President | Title: President |

**Attachment Clause on Following Page**

## Attachment Clause

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective
Insured

Policy No.
Insurance Company

Endorsement No.

Countersigned by ______________________

# Amendment to Loss Fund Management Agreement

This Amendment modifies and amends the Loss Fund Management Agreement (the "Agreement") between SUNZ Insurance Company ("SIC"); SUNZ Insurance Solutions, LLC ("SIS"); and the Program Owners. SIC, SIS, and Program Owners shall be referred to collectively as "The Parties."

The Parties and UWIC agree as follows:

1. This Amendment is effective and binding between the Parties as of the date set forth below and continues in force until terminated in writing by the Parties and United Wisconsin Insurance Company ("UWIC").

2. Only in regard to those polices listed on the Loss Fund Summary as issued by UWIC, UWIC is hereby added as a direct party to the Agreement and not as a third-party beneficiary. Only in regard to those polices listed on the Loss Fund Summary as issued by UWIC, UWIC hereby has the identical rights under the Agreement as SIC and SIS, without reservation or limitation of any kind.

3. At all times, any amounts owed and/or collected pursuant to the Agreement regard to those polices listed on the Loss Fund Summary as issued by UWIC are the property of UWIC subject to Program Owner's right under the Agreement. All funds owed and/or collected pursuant to the Agreement regard those polices listed on the Loss Fund Summary as issued by UWIC are held by SIS or SIC in trust for the benefit of UWIC subject to Program Owner's rights under the Agreement.

4. SIS and SIC are fiduciaries of UWIC with respect to the accounting, collection and disbursement of all funds received pursuant to the Agreement regard to those polices listed on the Loss Fund Summary as issued by UWIC.

5. Notwithstanding any of the above, SIS and SIC retain all rights and obligations to directly enforce the Agreement. The Agreement is otherwise unchanged and remains in full force and effect.

In Witness Whereof, the parties hereto by their respective duly authorized representatives execute this Amendment.

Signature Page and Program Summary Terms on Following Page

***ACKNOWLEDGED, AGREED TO AND ACCEPTED:*** ***January 1, 2023***

**Embraceor, LLC; WorkCentric, LLC; WorkCentric 2, LLC; and WorkCentric 3, LLC**

[sign]

By: Sheldon Altschuler

Title: President

**SUNZ INSURANCE SOLUTIONS, LLC and SUNZ INSURANCE COMPANY**

DocuSigned by:
Rick Leonard
AF395F242B28447...

By: Rick Leonard

Title: President

**United Wisconsin Insurance Company**

[sign]

DocuSigned by:
Eric Halter
EFDF0F6D5668479...

By: Eric Halter

Title: Managing Dir. / AF Specialty

# LOSS FUND SUMMARY

**Insurance Company:** **UNITED WISCONSIN INSURANCE COMPANY**

| | |
|---|---|
| Estimated Manual Premium | $43,571,126 |
| Loss Fund | 66.00% of Manual Premium |
| Loss Fund Deposit | $0 |
| **Due at Binding** | **$0** |
| **Estimated Post Bind Funding:**<br>Est. Weekly Loss Fund Installments as a % of Manual Premium | 66.00% of Manual Premium |
| **Deductible Reimbursement Payments:** | **Will be deducted from Loss Fund** |

# EXHIBIT C

*Execution Copy*

# FORBEARANCE AGREEMENT

This Forbearance Agreement (this "Agreement"), dated as of October 11, 2023 (the "Effective Date"), is made by and among Sunz Insurance Solutions, LLC ("Sunz"); and Embraceor, LLC, Workcentric, LLC, Workcentric 2, LLC, Workcentric 3, LLC and WC TopCo, LLC (collectively, the "Borrowers" or "Obligors"; Sunz and the Obligors, collectively, the "Parties" or, each, a "Party")).

## RECITALS

WHEREAS, Sunz and the Borrowers have entered into a Loss Fund Management Agreement, dated as of January 1, 2023 (the "Loss Fund Management Agreement"), relating to various payment obligations of the Borrowers to Sunz in respect of certain workers' compensation insurance policies (the "Insurance Program");

WHEREAS, to evidence certain delinquent payments under the Loss Fund Management Agreement, the Borrowers have delivered to Sunz a Commercial Promissory Note, dated as of July 18, 2023, in the original principal amount of $13,993,287.00 (the "Note"), which is secured by a Security Agreement, dated as of July 20, 2023 (the "Security Agreement" and, together with the Loss Fund Management Agreement, the Note and the other agreements entered into in connection therewith, the "Transaction Documents");

WHEREAS, to date, the Borrowers have failed to repay various obligations under the Insurance Program, in an aggregate amount equal to not less than $25,800,582.90, comprising (a) unpaid premiums in an aggregate amount equal to $2,344,557.94, (b) loss fund payment obligations (including obligations in respect of the Note) in an aggregate amount equal to $23,000,000, (c) taxes and surcharges in an aggregate amount equal to $456,024.92 and (d) applicable audit premiums (collectively, the "Obligations");

WHEREAS, the failure of the Borrowers to repay when due the Obligations constitute defaults under the terms of the Loss Fund Management Agreement, the Note and the other Transaction Documents (the "Specified Defaults"); and

WHEREAS, the Obligors have requested, and Sunz has agreed, subject to the terms and conditions of this Agreement, to forbear from proceeding with the exercise of Sunz's remedies under the Transaction Documents with respect to the Specified Defaults, for so long as the Obligors comply with the terms of this Agreement and the other Transaction Documents, until the Termination Date (as defined below) (the "Forbearance Period");

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

## AGREEMENT

1. **Recitals; Acknowledgement and Ratification of Transaction Documents and Obligations**. The foregoing recitals are true and correct and deemed a part of this Agreement. The Obligors acknowledge and agree that all terms, conditions and provisions of the Transaction Documents (as amended from time to time) continue in full force and effect and remain unaffected and unchanged except as expressly and specifically modified by this Agreement. This Agreement is not intended to and shall not be construed to create or constitute a release or relinquishment of, and, except as herein specifically provided to the contrary, shall not affect, the liens, security interests and rights of Sunz, and the liens, security interests and rights of Sunz are hereby ratified, confirmed, renewed and extended in all respects. The Obligors acknowledge and agree that all of the Obligations, in an aggregate amount not less than $25,800,582.90, are due and owing to Sunz and shall arise without offset, defense or counterclaim (it being understood that Obligors do not waive any offset, defense or counterclaim in respect of any amounts in excess of such amount), and further acknowledge and agree that the Loss Fund Management Agreement, the Note, the Security Agreement and the other Transaction Documents are valid and binding and fully enforceable according to their terms. The Transaction Documents are hereby ratified, affirmed and acknowledged as enforceable and operative in all respects by the Obligors.

2. **Conditions of Forbearance**. Sunz's agreement is conditioned upon and subject to the timely satisfaction by the Obligors of each of the following conditions:

(a) All direct and indirect owners of the Borrowers (collectively, the "Members") shall execute and deliver to Sunz a pledge agreement, substantially in the form attached hereto as Exhibit A (the "Pledge Agreement"), pursuant to which the Members shall pledge to Sunz, as additional collateral securing the Obligations, all direct and indirect membership or other equity interests in the Borrowers;

(b) Pursuant to the Pledge Agreement, the Members shall within three (3) business days (i) cause any and all direct or indirect membership or other equity interests in the Borrowers to be evidenced by certificates (collectively, the "Certificated Membership Interests") (and, as necessary, amend the governing documents of the Borrowers to permit the issuance of such certificates), and (ii) deliver to Sunz the Certificated Membership Interests, duly indorsed by effective endorsements in accordance with the Uniform Commercial Code as in effect in the State of Florida, in form and substance satisfactory to Sunz in its sole discretion; and

(c) The Members and the Obligors shall engage in a commercially reasonable process by which the Members and the Obligors shall seek to (i) sell either a minority or majority of the equity interests of the Borrowers, (ii) sell either a minority or majority of the "book" of the Borrowers (i.e., client relationships and revenue), and/or (iii) obtain financing from a third-party lender (the "Process"), in each case as mutually approved by Sunz, the Members and the Obligors, in a manner that will generate sufficient proceeds to satisfy all of the Obligations, it being understood and agreed by the Parties that (A) the Process shall include milestones as mutually agreed to by the Parties for identifying prospective purchasers and/or lenders,

negotiating letters of intent, executing transactional documents and closing such transaction at the conclusion of the Process; and (B) the Parties shall reasonably cooperate with each other in connection with the Process.

3. **Forbearance**. Subject to the express provisions of this Agreement, Sunz agrees to forbear from exercising its remedies under the Transaction Documents with respect to the Specified Defaults until the earliest to occur of (the "Termination Date"):

(a) One hundred twenty (120) days immediately following the Effective Date;

(b) Reserves under the Loss Fund Management Agreement as calculated by the twice reserved plus incurred methodology at any time being underfunded by an aggregate amount in excess of $23,000,000;

(c) Any additional defaults occurring under the Loss Fund Management Agreement, subject to any applicable cure periods, as agreed to by the Parties;

(d) Other than as set forth on Schedule 5(a) attached hereto, any lien being recorded or asserted against any of the Collateral (as defined in the Security Agreement);

(e) Failure by the Obligors to use reasonable efforts to effectuate the Process or any milestone of the Process, subject to any applicable cure periods, as agreed to by the Parties;

(f) Any transfer of the Collateral to any third party, outside the ordinary course of the Borrowers' business, without the express written consent of Sunz; and

(g) The occurrence of any breach of any promise or covenant by the Obligors contained in this Agreement, or of any default by the Obligors under any provision of this Agreement or the Transaction Documents.

Notwithstanding the foregoing, or anything else to the contrary herein or in the Transaction Documents, the Parties hereby acknowledge and agree that (i) upon the repayment in full in cash of all of the Obligations, the Parties shall execute mutually agreeable general releases of all claims in respect of the Insurance Program and the Transaction Documents, and (ii) prior to the Termination Date, the Members shall retain control over the management and operations of the Borrowers.

4. **Default Under Terms of Agreement**. Upon the occurrence of any breach of any promise or covenant by the Obligors contained in this Agreement or the Transaction Documents, Sunz shall serve a notice of default upon the Obligors and provide them with ten (10) days opportunity to cure such default. Said notice shall be served on the Obligors, pursuant to the addresses listed in Section 13, via U.S. mail. Delivery shall be effective upon mailing the default letter via U.S. mail.

If any default is not cured by the Obligors within ten (10) days, this Agreement shall be terminated. Upon termination of this Agreement, the entire amount of the Obligations shall be immediately due and payable, and Sunz shall be under no obligation to forbear in any respect and shall be entitled immediately to exercise all of its rights and remedies under the Transaction Documents and Florida law, all without further notice to the Obligors.

Additionally, the occurrence of any of the following events shall be deemed an "Event of Default" under this Agreement (in each case subject to the ten (10) day cure period set forth above): (a) any amount applied in payment of the Obligations is or must be, or is claimed or ordered to be, rescinded, avoided or returned by Sunz to any person or entity for any reason whatsoever (including, without limitation, bankruptcy, insolvency or reorganization of Obligors or any other person); (b) any or if any representation(s) or warrant(ies) of the Obligors in this Agreement are later determined to have been untrue or misleading in any material respect when made; or (iii) the Obligors have breached any provision of the Transaction Documents. Upon the occurrence of any Event of Default, Sunz shall be entitled to retain all amounts paid under this Agreement to reduce the outstanding amount of the Obligations, the Forbearance Period shall immediately terminate, the Obligors shall be liable to Sunz for the remaining Obligations and all other obligations under the Transaction Documents, without notice or demand, and Sunz shall be entitled to immediately file a complaint to obtain judgment against the Obligors and/or seek any other relief that Sunz is entitled to pursuant to the Transaction Documents and/or Florida law, and in connection with such litigation, the Obligors waive personal service of any and all process for any claims arising under or relating to this Agreement or the Transaction Documents, and the Obligors agree that service of process may be made upon them by mailing or delivering a copy of such process to the Obligors at the addresses designated in Section 13.

5. **Prospective Stay Relief**. In the event that any Borrower commences a voluntary bankruptcy proceeding or other insolvency proceeding, or an involuntary case is commenced against any Borrower, Sunz shall be entitled to immediate relief from the automatic stay to exercise all of its rights and remedies under this Agreement and the Transaction Documents and applicable law. Each of the Borrowers expressly waives any right to contest relief from any stay under any legal theory in effect as a result of an insolvency proceeding. Each of the Borrowers acknowledges that (a) it has consulted with a restructuring attorney prior to the negotiation and execution of this Agreement, and (b) the prospective stay relief negotiated herein is a material term of this Agreement.

6. **Rescindment of NOCs**. Prior to the date of this Agreement Sunz issued Notices of Cancellation ("NOCs") to insureds. Promptly following the execution of this Agreement, and in any event within one (1) business day hereof, Sunz will rescind such NOCs and deliver written confirmation (email being sufficient) of such rescission to Borrowers as promptly as reasonably practicable thereafter.

7. **No Obligation to Extend Future Forbearances; No Waiver**. The Obligors acknowledge and agree that Sunz is not obligated and does not agree to any other or future forbearance, except as expressly set forth herein. This Agreement shall not constitute a waiver by Sunz of any of Sunz's rights under the Transaction Documents. Except as expressly provided herein, Sunz reserves all of its rights and remedies under this Agreement and the Transaction Documents, at law or in equity, in the event of a default by the Obligors under this Agreement.

No action or course of dealing on the part of Sunz, its officers, employees, consultants or agents, nor any failure or delay by Sunz with respect to exercising any right, power or privilege of Sunz under the Transaction Documents or this Agreement, shall operate as a waiver thereof, except to the extent expressly provided herein. The rights and remedies provided in this Agreement and the Transaction Documents are cumulative and not exclusive of each other or of any right or remedy provided by law or in equity. Except as otherwise expressly provided in the Transaction Documents, no notice to or demand upon the Obligors in any instance shall, in itself, entitle the Obligors to any other or further notice or demand in similar or other circumstances or constitute a waiver of the right of Sunz to any other or further action in any circumstance without notice or demand.

8. **Attorneys' Fees, Costs, and Expenses**. In the event that the Obligors fail to perform any of the obligations under this Agreement or in the event a dispute arises concerning the meaning or interpretation of any provision of this Agreement, the Obligors shall pay any and all costs and expenses incurred by Sunz in enforcing or establishing its rights hereunder, including without limitation reasonable attorney's fees and court costs.

9. **Novation.** This Agreement shall not constitute a novation of the Obligations or the Transaction Documents.

10. **Accord and Satisfaction.** This Agreement shall not constitute an accord and satisfaction of the Obligations or the Transaction Documents.

11. **Representations and Warranties**. The Obligors hereby make the following representations and warranties:

(a) The Obligors are not the subject of any proceedings under any law relating to bankruptcy, insolvency, reorganization or other relief of debtors;

(b) The Obligors have all requisite power and authority to enter into this Agreement and to carry out the provisions hereof. Each individual executing this Agreement represents and warrants that he or she is duly authorized by the appropriate corporate party or individual(s) to execute this Agreement and has all requisite power, authority and approval required to enter into, execute and deliver this Agreement on behalf of the Obligors, and that no other party's consent is required in connection with the effectiveness of the releases.

(c) Neither Sunz, nor any officer, agent, servicer, employee, representative or attorney of or for Sunz, has made any statement or representation to the Obligors regarding any fact relied upon in entering into this Agreement (including, without limitation, with respect to any tax ramifications), and the Obligors acknowledge and agree that they have not relied upon any statement, representation or promise of any other party or of any officer, agent, employee, representative or attorney for Sunz in executing this Agreement, or in making the agreements, amendments and releases provided for herein.

(d) The Obligors represent that they have had adequate opportunity to consult with counsel or other advisor of their own choosing in connection with this Agreement;

(e) The Obligors acknowledge that, as of the Effective Date, Sunz possesses a lien on the Collateral pursuant to the Security Agreement and on the Pledged Collateral pursuant to the Pledge Agreement; and

(f) No representation, warranty or statement of the Obligors in this Agreement contains or will contain any untrue statement.

12. **Confidentiality**. Unless necessary to enforce this Agreement, each Party, for and on behalf of itself, its agents, heirs, insurers, successors and assigns, covenants that it will keep this Agreement and all negotiations with the other Party concerning any of the Transaction Documents and this Agreement strictly confidential and, except as may otherwise be required by law, will not disclose the terms of this Agreement or the content of any of the negotiations hereunder to any person or entity, except to their respective legal, tax and other advisors, financing partners, its counsel, and agents, if required, but only after advising them of this obligation of confidentiality. Each Party shall be responsible for any breach of this provision by any person to whom such Party shall provide information or documents required to be kept confidential under this provision.

13. **Notice**. Any notice required or permitted under this Agreement shall be deemed effectively given when mailed by certified mail, return receipt requested, or nationally recognized overnight delivery or messenger service and addressed to the Party for whom intended, and when sent by e-mail, to the addresses provided below for that Party or to such other address as any Party may designate for itself or himself by notice given to the other parties in the manner herein provided or when actually received by the Party for whom intended if sent by other than the methods provided herein:

(a) As to the Obligors:

Embraceor, LLC/Workcentric, LLC/Workcentric 2, LLC/Workcentric 3, LLC/
WC TopCo, LLC
1900 Reston Metro Plaza, Suite 600
Reston, VA 20190
Attention: David Harvey, President

With copy to:

Christopher Froelich
Holland & Knight LLP
31 West 52nd Street
New York, NY 10019

(b) As to Sunz:

Sunz Insurance Solutions, LLC
1301 6th Avenue W
Bradenton, FL 34205
Attention: Theodore G. Bryant, Executive Vice President and Chief Legal Officer

With copy to:

Jason Oletsky
Akerman LLP
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, FL 33301

14. **Jurisdiction and Venue**. All Parties agree that they hereby submit themselves to the County or Circuit Court of Manatee County, Florida, for the purposes of the resolution of any disputes or the conduct of any litigation arising out of or seeking to enforce any of the provisions of this Agreement or the Transaction Documents. The Parties expressly waive any challenge to the jurisdiction, authority, or venue of the County or Circuit Court of Manatee County, Florida, to enforce the terms of this Agreement or the Transaction Documents.

15. **Time is of Essence**. Time is of the essence for all time periods set forth herein.

16. **Consent to Agreement**. The Obligors acknowledge that they have entered into this Agreement, knowingly, voluntarily, and under no duress, and acknowledge that they received substantial consideration for the entering into of this Agreement.

17. **Tax Consequences**. Any tax consequences resulting from this Agreement, whether federal, state, or local, to any Party, will be the sole responsibility of that Party.

18. **Governing Law**. This Agreement shall be construed solely and interpreted exclusively in accordance with the laws of the State of Florida.

19. **Successors and Assigns**. This Agreement shall be binding upon and inure to the benefit of, as applicable, each of the Parties' respective successors, assigns, heirs, estates, representatives, transferees, executors, and administrators.

20. **Amendments**. This Agreement cannot be amended, rescinded, supplemented or modified except in writings signed by the parties hereto. The Agreement cannot be modified except by virtue of a further written document signed by the party sought to be charged with that modification. No amendment, supplement, or termination of this Agreement shall affect or impair any rights or obligations which heretofore have matured under this Agreement unless specifically provided for in that amendment.

21. **Construction**. The Parties agree that any rule of construction to the effect that ambiguities are resolved against the drafting party shall not apply to the interpretation of this Agreement.

22. **Paragraph Headings**. The headings and titles of the several paragraphs of this Agreement are inserted solely for convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction of any term or provision of this Agreement.

23. **Waiver**. Any waiver by any party of any of the provisions of this Agreement at any time shall constitute a waiver only for that particular instance and for that particular purpose at that particular time and shall not be construed as constituting a waiver for any other breach of any sort, type, or nature for any occurrence, similar or otherwise, at any time in the future.

24. **Severability**. This Agreement and each of its parts shall be severable and, if any provision is determined to be void, invalid or unenforceable, the remainder of this Agreement shall be fully enforced without such term(s).

25. **Counterparts**. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same instrument. A facsimile or e-mail copy of this Agreement and any signature hereon shall be considered for all purposes as originals.

26. **Further Assurances**. The Parties agree to execute any documents necessary, and to take any other actions necessary, to implement the terms of this Agreement.

27. **Complete Agreement**. This Agreement constitutes the entire agreement between the Parties and supersedes any other discussions or agreements relating to the subject of this Agreement.

28. **WAIVER OF JURY TRIAL. ALL OF THE PARTIES TO THIS AGREEMENT WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY ANY OF THEM AGAINST ANY OTHER PARTY OR PARTIES IN ANY MATTERS WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT AND/OR ANY CLAIM OF INJURY OR DAMAGE.**

29. **Effective Date**. For all purposes, the Effective Date of this Agreement shall be the date on which the last party hereto executes the Agreement.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**IN WITNESS WHEREOF**, the undersigned Parties, have executed this Forbearance Agreement as of the date first written above.

**SUNZ:**

SUNZ INSURANCE SOLUTIONS, LLC

Sign: ______________________________
Print Name: Steven F. Herrig
Title: CEO

**OBLIGORS:**

EBRACEOR, LLC

Sign: ______________________________
Print Name: ______________________________
Title: ______________________________

WORKCENTRIC, LLC

Sign: ______________________________
Print Name: ______________________________
Title: ______________________________

WORKCENTRIC 2, LLC

Sign: ______________________________
Print Name: ______________________________
Title: ______________________________

WORKCENTRIC 3, LLC

Sign: ______________________________
Print Name: ______________________________
Title: ______________________________

**IN WITNESS WHEREOF**, the undersigned Parties, have executed this Forbearance Agreement as of the date first written above.

**SUNZ:**

SUNZ INSURANCE SOLUTIONS, LLC

Sign: ______________________________
Print Name: ______________________________
Title: ______________________________

**OBLIGORS:**

EBRACEOR, LLC

Sign: ______________________________
Print Name: David Harvey
Title: President

WORKCENTRIC, LLC

Sign: ______________________________
Print Name: David Harvey
Title: President

WORKCENTRIC 2, LLC

Sign: ______________________________
Print Name: David Harvey
Title: President

WORKCENTRIC 3, LLC

Sign: ______________________________
Print Name: David Harvey
Title: President

WC TOPCO, LLC

Sign: ______________________________

Print Name: David Harvey

Title: President

EXHIBIT A

Form of Pledge Agreement

**PLEDGE AGREEMENT**

This Pledge Agreement (this "Agreement") is dated as of October 11, 2023, by and among WC Container LLC, Embraceor, LLC, Workcentric, LLC, Workcentric 2, LLC, Workcentric 3, LLC and WC TopCo, LLC (collectively, the "Pledgors" and, each individually, a "Pledgor"); solely for purposes of Section 1 and Section 5, Docks Sutherland (and shall be deemed to be a "Pledgor" for purposes thereof); and Sunz Insurance Solutions, LLC (the "Secured Party").

**RECITALS**

Concurrently with the execution hereof, Embraceor, LLC, Workcentric, LLC, Workcentric 2, LLC, Workcentric 3, LLC and WC TopCo, LLC (collectively, the "Borrowers"), [and Docks Sutherland (together with the Borrowers, the "Obligors")] have entered into a Forbearance Agreement with the Secured Party (the "Forbearance Agreement"). Capitalized terms used and not otherwise defined herein shall have the meanings given such terms in the Forbearance Agreement.

This Agreement is given by the Pledgors in favor of the Secured Party to secure the payment and performance of all of the Obligations (as defined in the Forbearance Agreement).

The Pledgors are the legal and beneficial owners of the membership interests of the Borrowers as set forth on Schedule A attached hereto (collectively, the "Pledged Interests").

NOW, THEREFORE, in consideration of the foregoing premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Pledge**. The Pledgors hereby pledge and grant to the Secured Party, for the benefit of the Secured Party, a continuing first priority security interest in all of the Pledgors' now existing or hereafter arising right, title and interest in and to the following property (collectively, the "Pledged Collateral") to secure all of the Obligations:

(a) the Pledged Interests;

(b) all distributions, refunds or returns of capital, repayments of loans or advances, fees, income, profits and other property, interests or proceeds from time to time receivable, received or otherwise distributed or owing to the Pledgors in respect of, or in exchange for, any or all of the Pledged Interests (collectively, "Distributions"); and

(c) all Proceeds (as such term is defined in Section 9-102 of the Uniform Commercial Code as in effect from time to time in the State of Florida ("UCC")) of any of the foregoing.

2. **Secured Obligations**. This Agreement secures, and the Pledged Collateral is collateral security for, the prompt payment and performance in full when due of (a) the Obligations and any other amounts that become due and payable to the Secured Party in respect of payment of the Obligations pursuant to the Forbearance Agreement and the Transaction Documents (as defined therein), and (b) all obligations of the Pledgors now or hereafter existing under or in respect of this Agreement (the obligations described in clauses (a) and (b) are, collectively referred to as the "Secured Obligations"); provided that in the case of clause (b) only, the Pledged Collateral pledged by each Pledgor shall constitute security for the performance only of the obligations of such Pledgor now or hereafter existing under or in respect of this Agreement and not for any other Pledgor's obligations hereunder.

3. **No Release**. Nothing set forth in this Agreement shall (a) relieve the Pledgors from the performance of any term, covenant, condition or agreement on the Pledgors' part to be performed or observed under or in respect of any of the Pledged Collateral or from any liability to any person or entity under or in respect of any of the Pledged Collateral; (b) impose any obligation on the Secured Party to perform or observe any such term, covenant, condition or agreement on the Pledgor's part to be so performed or observed; or (c) impose any liability on the Secured Party for any act or omission on the part of the Pledgors relating thereto or for any breach of any representation or warranty on the part of the Pledgors contained in this Agreement. The obligations of the Pledgors contained in this Section 3 shall survive the termination of this Agreement and the discharge of the Pledgors' other obligations hereunder.

4. **Perfection of Pledge; Further Assurances**.

(a) The Pledgors shall, from time to time, as may be required by the Secured Party with respect to all Pledged Collateral, promptly take all actions as may be requested by the Secured Party to perfect the security interest of the Secured Party in the Pledged Collateral.

(b) The Pledgors shall within three (3) business days (i) cause any and all direct or indirect membership or other equity interests in the Borrowers to be evidenced by certificates (collectively, the "Certificated Membership Interests") (and, as necessary, amend the governing documents of the Borrowers to permit the issuance of such certificates), and (ii) deliver to Sunz the Certificated Membership Interests, duly indorsed by effective endorsements in accordance with the Uniform Commercial Code as in effect in the State of Florida, in form and substance satisfactory to Sunz in its sole discretion;

(c) The Pledgors hereby irrevocably authorize the Secured Party at any time and from time to time to file in any relevant jurisdiction any financing statements and amendments thereto that contain the information required by Article 9 of the UCC of each applicable jurisdiction for the filing of any financing statement or amendment relating to the Pledged Collateral, without the signature of the Pledgors where permitted by law. The Pledgors agree to provide all information required by the Secured Party pursuant to this Section 4 promptly to the Secured Party upon request.

(d) At any time and from time to time, at the expense of the Secured Party, the Pledgors shall promptly execute and deliver all further instruments and documents and take all further action that may be necessary or that the Secured Party may reasonably request in order to

protect any pledge or security interest granted or purported to be granted hereby or to enable the Secured Party to exercise and enforce its rights and remedies hereunder with respect to any Pledged Collateral.

5. **Representations and Warranties**. Each of the Pledgors hereby represents and warrants and covenants (as applicable), as follows:

(a) Each Pledgor is, and at the time of any delivery of any Pledged Collateral to the Secured Party will be, the legal and beneficial owner of their respective Pledged Collateral. Except as set forth on Schedule 5(a) attached hereto, there are no liens, security interests, encumbrances, claims, options or rights of others (collectively, "Liens") on the Pledged Collateral and the applicable Pledged Collateral is and will be owned by the applicable Pledgor free and clear of any Lien except, in each case, for (i) the security interest created by this Agreement, (ii) any restrictions on transfer in the Borrowers' governing documents, (iii) those imposed under applicable securities laws and (iv) created by the Secured Party during its period of ownership of the Pledged Collateral.

(b) Each Pledgor has full power, authority and legal right to pledge its Pledged Collateral pursuant to this Agreement.

(c) No consent of any Party, and no consent, authorization, approval, or other action by, and no notice to or filing with, any governmental authority or other person or entity is required (i) for the pledge by the applicable Pledgor of the Pledged Collateral pursuant to this Agreement or for the execution, delivery or performance of this Agreement by such Pledgor, (ii) for the exercise by the Secured Party of the voting or other rights provided for in this Agreement, or (iii) for the exercise by the Secured Party of the remedies in respect of the Pledged Collateral pursuant to this Agreement.

(d) Each Pledgor's address is as set forth on Schedule A.

(e) As of the date hereof, (i) the Pledged Interests identified on Schedule A constitute all of the equity interests of the Borrowers owned by the applicable Pledgor and (ii) Schedule A constitutes a true and complete description of the Pledged Interests.

(f) The Pledgors have consented to the Secured Party, upon the occurrence of a Default (as defined below), exercising any rights of membership in the Borrowers and have consented to the Secured Party electing to become a successor member in the Borrowers, as set forth in this Agreement. As used herein, the term "Default" shall mean (i) a breach under the Forbearance Agreement or (ii) the failure of any Pledgor to fulfill any obligation hereunder, in each case, if such breach or failure continues unremedied (if curable) for thirty (30) days after written notice from the Secured Party.

6. **Voting Rights; Distributions**.

(a) So long as no Default shall have occurred and be continuing:

(i) the Pledgors shall be entitled to exercise any and all voting and other consent rights pertaining to the Pledged Interests or any part thereof for any purpose not

inconsistent with the terms or purpose of this Agreement, and the Secured Party shall not be entitled to exercise such rights; and

(ii) except as otherwise provided in this Agreement, the Pledgors shall be entitled to receive and retain, and to utilize free and clear of the Lien of this Agreement, any and all Distributions, and the Secured Party shall not be entitled to receive, retain or utilize such Distributions.

(b) Upon the occurrence and during the continuance of a Default:

(i) all rights of each of the Pledgors to exercise the voting and other consent rights it would otherwise be entitled to exercise pursuant to Section 6(a)(i) shall immediately cease, and all such rights shall thereupon become vested in the Secured Party, which shall thereupon have the sole right to exercise such voting and other consent rights; and

(ii) all rights of each of the Pledgors to receive Distributions which it would otherwise be authorized to receive and retain pursuant to Section 6(a)(ii) shall cease, and all such rights shall thereupon become vested in the Secured Party, which shall thereupon have the sole right to receive and hold as Pledged Collateral such Distributions until the Secured Obligations have been paid in full.

**7. Additional Covenants of the Pledgors.**

(a) Each Pledgor shall not (i) sell, convey, assign, transfer or otherwise dispose of, or grant any option, right or warrant with respect to, any of the Pledged Collateral pledged by such Pledgor, (ii) create or a permit to exist any Lien upon or with respect to any Pledged Collateral pledged by such Pledgor other than the Lien and security interest granted to the Secured Party under this Agreement and any Lien set forth on Schedule 5(a) attached hereto, (iii) amend, modify or terminate the governing documents of any borrower, or (iv) permit the Borrowers to merge, dissociate, liquidate, consolidate or change its legal form.

(b) Each Pledgor shall (i) use its best efforts to cause the Borrowers not to issue any membership interests in addition to or in substitution for the Pledged Interests and (ii) pledge hereunder, immediately upon its acquisition (directly or indirectly) thereof, any and all additional membership interests of the Borrowers acquired by such Pledgor after the date hereof.

8. **Remedies upon Default; Decisions Relating to Exercise of Remedies**.

(a) If any Default shall have occurred and be continuing, the Secured Party shall have the right, in addition to other rights and remedies provided for herein or otherwise available to it to be exercised from time to time (including under the Forbearance Agreement, at law or in equity), (i) to retain and apply the Distributions to the Secured Obligations, (ii) to exercise all the rights and remedies of a secured party on default under the UCC in effect in any applicable jurisdiction at that time, (iii) to exercise all rights of the Pledgors as members of the Borrowers and/or become a successor member to the Borrowers, and (iv) to exercise any other rights or remedies pursuant to the Forbearance Agreement.

(b) In addition to any of the other rights and remedies hereunder, the Secured Party shall have the right to institute any claim, action, suit or proceeding seeking specific performance in connection with any of the agreements or obligations hereunder.

9. **Power of Attorney**. Upon the occurrence and during the continuance of a Default,

(a) each Pledgor does hereby irrevocably make, constitute and appoint the Secured Party, or any of its officers or designees, its true and lawful attorney-in-fact with full power in the name of the Secured Party, its subsidiaries or such Pledgor to endorse any notes, checks, drafts, money orders or other evidences of payment relating to the Pledged Interests that may come into the possession of the Secured Party, with full power and right to do any and all other acts necessary or proper to carry out the intent of this Agreement and the grant of the Liens and security interests hereunder, and such Pledgor, on its own behalf and on behalf of its subsidiaries, hereby ratifies and confirms all that the Secured Party or its substitutes shall properly do by virtue thereof; and

(b) each Pledgor does hereby further irrevocably make, constitute and appoint the Secured Party, or any of its officers or designees, its true and lawful attorney-in-fact in the name of the Secured Party, its subsidiaries or such Pledgor (i) to enforce all of such Pledgor's rights under and pursuant to all agreements with respect to the Pledged Interests, all for the sole benefit of the Secured Party, (ii) to enter into and perform such agreements as may be necessary in order to carry out the terms, covenants and conditions of this Agreement that are required to be observed or performed by such Pledgor, (iii) to execute such other and further mortgages, pledges and assignments of the Pledged Interests, and related instruments or agreements, as the Secured Party may reasonably require for the purpose of perfecting, protecting, maintaining or enforcing the Liens and security interests granted to the Secured Party hereunder, and (iv) to do any and all other things necessary or proper to carry out the intention of this Agreement and the grant of the Liens and security interests hereunder and such Pledgor hereby ratifies and confirms in advance all that the Secured Party as such attorney-in-fact or its substitutes shall properly do by virtue of this power of attorney.

10. **Obligations Absolute**. All obligations of the Pledgors hereunder shall be absolute and unconditional irrespective of (a) any bankruptcy, reorganization or the like of the Borrowers, (b) any lack of validity or enforceability of the Forbearance Agreement, (c) any change in the time, manner or place of payment of, or in any other term of, all or any of the Secured Obligations, or any other amendment or waiver of, or any consent to any departure from, the Forbearance Agreement, (d) any exchange, release or non-perfection of any other collateral, or any release or amendment or waiver of or consent to any departure from any guaranty, for all or any of the Secured Obligations, or (e) any other circumstances which might otherwise constitute a defense available to, or a discharge of, the Pledgors.

11. **Expenses**. Upon demand, the Pledgors will pay to the Secured Party the amount of any and all reasonable and documented out of pocket expenses, including the reasonable and documented out of pocket fees and expenses of its outside counsel and the reasonable and documented out of pocket fees and expenses of any experts and agents, which the Secured Party may incur in connection with (a) the collection of the Secured Obligations, (b) the custody or preservation of, collection from, or other realization upon, any of the Pledged Collateral, (c) the exercise or enforcement of any of the rights of the Secured Party hereunder, or (d) the failure by

the Pledgors to perform or observe any of the provisions hereof; provided that in the case of clauses (b) and (d), only the Pledgor or Pledgors which has or have failed to perform or observe a provision hereof shall be liable for such expenses in connection with that Pledgor's failure. All amounts payable by the Pledgors under this Section 11 shall be due upon demand and shall be part of the Secured Obligations. The Pledgors' obligations under this Section 11 shall survive the termination of this Agreement and the discharge of the Pledgors' other obligations hereunder.

12. **Termination**. When all the Secured Obligations (other than Secured Obligations in the nature of continuing indemnities and expense reimbursement obligations not yet due and payable) have been indefeasibly paid in full in cash in accordance with the Forbearance Agreement and have been terminated, this Agreement shall terminate. Upon termination of this Agreement, the Secured Party shall, upon the written request and at the expense of the Pledgor receiving such Pledged Collateral, forthwith assign, transfer and deliver to each Pledgor, against receipt and without recourse to or warranty by the Secured Party, such of the Pledged Collateral of such applicable Pledgor as may be in the possession of the Secured Party (including the Certificated Membership Interests) and as shall not have been applied pursuant to the terms hereof, and shall execute UCC termination statements on Form UCC-3 with respect to any financing statements and amendments filed in connection with this Agreement ("UCC Terminations"). Without limiting the foregoing, the Pledgors are hereby expressly authorized to file UCC Terminations upon the termination of this Agreement without the signature of the Secured Party where permitted by law. The Secured Party shall have no responsibility under this Agreement to undertake any other actions upon termination of this Agreement, except as provided in this Section 12.

13. **Notice**. Any notice or other communication required or permitted under this Agreement shall be deemed to have been duly given and made if given in accordance with Section 13 of the Forbearance Agreement.

**14. Successors and Assigns.**

(a) Whenever in this Agreement any of the parties hereto is referred to, such reference shall be deemed to include the successors and assigns of such party; provided that the Pledgors may not assign this Agreement, or any of their rights or obligations hereunder, without the prior written consent of the Secured Party and all covenants, promises and agreements by or on behalf of the Pledgors which are contained in this Agreement shall inure to the benefit of the successors and assigns of the Secured Party.

(b) The Secured Party may assign all or a portion of its interests, rights and obligations under this Agreement to any of its affiliates or any successor in interest.

15. **Governing Law**. This Agreement shall in all respects be construed solely in accordance with, and governed exclusively by, the laws of the State of Florida, without giving effect to the principles of conflict of laws thereof, which are applicable to contracts made and to be performed wholly within such state.

16. **No Waiver**. No failure on the part of the Secured Party to exercise, and no delay in exercising, any right, power, privilege or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power, privilege or remedy preclude any other

or further exercise thereof or the exercise of any other right, power, privilege or remedy and no course of dealing shall operate as a waiver of any right, power, privilege or remedy of the Secured Party. All remedies hereunder are cumulative and are not exclusive of any other remedies provided by law.

17. **Amendments, etc**. No modification, amendment or waiver of any provision of this Agreement, and no consent to any departure by the Pledgors from the provisions hereof, shall in any event be effective unless in the case of a modification or amendment, the same shall be in writing and signed by the Secured Party and the Pledgors and in the case of a waiver, the same shall be in writing and signed by the party against whom such waiver is sought, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. No notice to or demand on the Pledgors shall entitle the Pledgors to any other or further notice or demand in the same, similar or other circumstances.

18. **Severability**. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

19. **Headings**. Section headings used herein are for convenience only and are not to affect the construction of, or be taken into consideration in interpreting, this Agreement.

20. **Execution in Counterparts**. This Agreement may be signed in any number of counterparts with the same effect as if the signatures to each counterpart were upon a single instrument, and all such counterparts together shall be deemed an original of this Agreement. This Agreement may be executed via facsimile or other electronic means (including in .pdf or similar format) and shall be deemed to have the same legal effect as delivery of an original signed copy of the Agreement. No party shall raise the fact that any signature or instrument was transmitted or executed by means of facsimile or other electronic means as a defense to the formation or enforceability of a contract and each party irrevocably waives any such defense. Minor variations in the form of the signature pages to this Agreement, including variations in the footers thereto, shall be disregarded in determining the effectiveness of the signatures thereon.

21. **Entire Agreement**. This Agreement, including the Schedule hereto, represents the entire agreement of the parties with regard to the subject matter hereof, and supersedes all prior and contemporaneous agreements, negotiations, correspondence, undertakings and communications of the parties or their representatives or affiliates, oral or written, respecting such subject matter.

IN WITNESS WHEREOF, the parties hereto have caused this Pledge Agreement to be duly executed and delivered as of the date first above written.

**PLEDGORS:**

WC CONTAINER LLC

Sign: ____________________
Print Name: David Harvey
Title: President

EBRACEOR, LLC

Sign: ____________________
Print Name: David Harvey
Title: President

WORKCENTRIC, LLC

Sign: ____________________
Print Name: David Harvey
Title: President

WORKCENTRIC 2, LLC

Sign: ____________________
Print Name: David Harvey
Title: President

WORKCENTRIC 3, LLC

Sign: ______________________________
Print Name: David Harvey
Title: President

WC TOPCO, LLC

Sign: ______________________________
Print Name: David Harvey
Title: President

**Solely for purposes of Section 1 and Section 5 hereunder:**

Sign: ______________________________
Print Name: Docks Sutherland

**SUNZ:**

SUNZ INSURANCE SOLUTIONS, LLC

By: ______________________
Name: ______________________
Title: ______________________

WORKCENTRIC 3, LLC

Sign: ______________________________
Print Name: __________________________
Title: ______________________________

WC TOPCO, LLC

Sign: ______________________________
Print Name: __________________________
Title: ______________________________

**Solely for purposes of Section 1 and Section 5 hereunder:**

Sign: ______________________________
Print Name: Docks Sutherland

**SUNZ:**

SUNZ INSURANCE SOLUTIONS, LLC

By: ______________________________
Name: Steven F. Herrig
Title: CEO

# SCHEDULE A

Pledged Interests

| ***Borrower*** | ***Owner*** | ***Owner Address*** |
|---|---|---|
| WC Container LLC | Docks Sutherland (100%) | 174 West 4th Street, Suite 290<br>New York, NY 10014 |
| WC TopCo LLC | WC Container LLC (100%) | 174 West 4th Street, Suite 290<br>New York, NY 10014 |
| Embraceor LLC | WC TopCo, LLC (100%) | 1900 Reston Metro Plaza<br>Suite 600<br>Reston, VA 20190 |
| Workcentric, LLC | WC TopCo, LLC (100%) | 1900 Reston Metro Plaza<br>Suite 600<br>Reston, VA 20190 |
| Workcentric 2, LLC | WC TopCo, LLC (100%) | 1900 Reston Metro Plaza<br>Suite 600<br>Reston, VA 20190 |
| Workcentric 3, LLC | WC TopCo, LLC (100%) | 1900 Reston Metro Plaza<br>Suite 600<br>Reston, VA 20190 |

## SCHEDULE 5A

### Liens

Pipe Technologies Inc. has a lien on certain approved accounts receivable of and a bank account related to such approved accounts receivable (yet to be formed) by Workcentric LLC.

# EXHIBIT D

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUNZ INSURANCE SOLUTIONS, LLC,

Plaintiff,

v. CASE NO. 8:23-cv-2517-SDM-CPT

DOCKS SUTHERLAND, et al.,

Defendants.
___________________________________/

**ORDER**

Sunz Insurance Solutions, LLC, a "managing general agent" that insurers appoint to, "among other things, [] solicit, receive, accept, bind, issue, and transmit proposals for insurance programs[,]" alleges (Doc. 1) that the defendants breached several agreements comprising an "insurance program." In a paper designated "time-sensitive," Sunz moves (Doc. 9) for the appointment of a receiver. The defendants move (Doc. 10) to compel this action to arbitration.

**BACKGROUND**

WorkCentric, LLC, one of the defendants, contracted with Sunz for workers' compensation insurance. In January 2023, Sunz; WorkCentric; WorkCentric 2, LLC; WorkCentric 3, LLC; and Embraceor, LLC, executed a "quotation agreement," a "loss fund management agreement," and a "security agreement." (Docs. 1-1; 1-2; and 1-3) Sunz and Sheldon Altschuler, the owner and president of WorkCentric; WorkCentric 2; WorkCentric 3; and Embraceor, executed a "guaranty

agreement," in which Altschuler guaranteed the payment of "all liabilities or obligations arising under the Loss Fund Management Agreement." (Doc. 1-4) Altschuler sold the LLCs to Benjamin "Docks" Sutherland, who appointed David Harvey president of each. (Doc. 9 at 8) According to Sunz, the defendants failed to pay their insurance premium and violated the agreements by failing to maintain a certain balance in a "Loss Fund account" from which Sunz receives reimbursement up to $500,000 for each claim.

On behalf of Embraceor, WorkCentric 2, and WorkCentric 3, Harvey executed (Doc. 1-6) a promissory note to Sunz for $13,993,287, secured by assets, including bank accounts, money, and accounts receivable. According to Sunz, the defendants failed to pay the promised money and executed a "forbearance agreement," in which Sunz promised not to foreclose the security interest in the defendants' assets and in which the defendants promised to comply with certain conditions. On October 18, 2023, Sunz declared the defendants in default of the forbearance agreement. According to the defendants (Doc. 11), Sunz purposefully designed to create the default.

Sunz sues (Doc. 1) and asserts five breach-of-contract claims (Counts I through V), a breach-of-fiduciary-duty claim (Count VI), and a claim for "aiding and abetting breach of fiduciary duty" (Count VII). Citing the January security agreement and the agreement attached to, and securing, the promissory note, each of which permits Sunz to "obtain the appointment of a receiver" and requires Embraceor, WorkCentric 2, and WorkCentric 3 not to oppose the appointment of a

receiver, Sunz moves (Doc. 9) to appoint a receiver. In response, the defendants move (Doc. 10) to compel the action to arbitration. The quotation agreement and the loss-fund-management agreement include a "dispute resolution" section that requires the parties to submit to mediation "any controversy or claim arising out of or relating in any way to this Agreement or the breach or alleged breach" of the agreement.[1] (Doc. 1-1 at 11; Doc. 1-2 at 8) Each agreement states that if mediation fails to resolve the dispute, the parties "shall submit the dispute to binding arbitration" in accord with the AAA arbitration rules. (Doc. 1-1 at 11; Doc. 1-2 at 8–9) Sunz opposes (Doc. 18) the motion to compel arbitration.

**ANALYSIS**

Public policy favors the enforcement of an arbitration agreement. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). "Courts must 'rigorously enforce' arbitration agreements according to their terms[.]" *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). The Federal Arbitration Act requires a district court to compel the parties to arbitrate on each issue within the scope of the agreement. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Although not every agreement between Sunz and the defendants includes an agreement to arbitrate, the quotation agreement and the loss-fund-management agreement include a "dispute resolution" section that directs the parties to submit to

[1] Nothing suggests the parties have mediated their dispute. According to the defendants, Sunz sued "preemptively and in violation of the alternative dispute resolution provisions" in the parties' agreements.

binding arbitration in accord with the AAA arbitration rules "any controversy or claim arising out of or relating in any way" to the quotation agreement and the loss-fund-management agreement. As explained by *Krol v. FCA US, LLC*, 273 So. 3d 198, 206 n.8 (Fla. 5th DCA 2019), *approved*, 310 So. 3d 1270 (Fla. 2021), "when, as here, parties to a contract execute two or more documents at or near the same time and [the documents] concern the same transaction or subject matter, the documents are generally construed together as a single contract." If several agreements comprise "a single transaction . . . designed to effectuate the same purpose[]" or if an agreement "expressly refers to and sufficiently describes another document," the several agreements are interpreted as one agreement. *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1033 (11th Cir. 2017); *Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*, 788 F.3d 1329, 1339 (11th Cir. 2015). The parties contemporaneously executed — as part of the same "program" — the quotation agreement, the loss-fund-management agreement, the first security agreement, and the guaranty agreement. Each agreement incorporates the arbitration agreement. Similarly, because the later agreements are "designed to effectuate" the "insurance program" and because several of the later agreements, including the promissory note and the corresponding security agreement, "expressly refer[]" to the quotation agreement and the loss-fund-management agreement, the later agreements incorporate the arbitration agreement.

If a party challenges the arbitrability of a claim in this action, the arbitrator — not the district judge — must determine questions of arbitrability, which the parties' arbitration agreement delegates to an arbitrator. *Henry Schein, Inc. v. Archer &*

*White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). *WasteCare Corp. v. Harmony Enterprises, Inc.*, 822 Fed. Appx. 892, 896 (11th Cir. 2020) (quoting *JPay, Inc. v. Kobel*, 904 F.3d 923, 936 (11th Cir. 2018)), explains that an arbitration agreement's "express[] incorporat[ion of] the AAA rules into an arbitration provision . . . 'serves as a clear and unmistakable delegation of questions of arbitrability to an arbitrator.'" Because the parties' arbitration agreement states that any "arbitration shall be conducted pursuant to the then-current AAA arbitration rules and shall be administered by the AAA[,]" the parties have unmistakably delegated to the arbitrator any question about the arbitrability of the action or of any claim, defense, or remedy, including injunctive relief.[2]

Arguing against the enforcement of the arbitration agreement, Sunz contends that the later agreements, specifically the forbearance agreement and the "pledge agreement," "override" the arbitration required by the earlier agreements. The quotation agreement and the loss-fund-management agreement include a "modification" provision that permits the parties to change the agreement by executing a written addendum to the agreement. (Doc. 1-1 at 14; Doc. 1-2 at 7) The forbearance agreement includes a provision that states that the parties agree to submit to "the County or Circuit Court of Manatee County, Florida, for the purposes of the resolution of any disputes or the conduct of any litigation arising out of or seeking to enforce any

---

[2] Counts VI and VII are not breach of contract claims, but "tort claims and claims other than breach of contract are not automatically excluded from a contractual arbitration clause." *Gregory v. Electro-Mech. Corp.*, 83 F.3d 382, 384 (11th Cir. 1996).

of the provisions of this Agreement or the [earlier agreements]." (Doc. 1-10 at 13) Similarly, the pledge agreement includes a provision stating that "[i]n addition to any of the other rights and remedies hereunder, [Sunz] shall have the right to institute any claim, action, suit[,] or proceeding seeking specific performance in connection with any of the agreements or obligations hereunder." (Doc. 1-10 at 23) Both the forbearance agreement and the pledge agreement state that they comprise "the entire agreement between the [p]arties" and that they supersede other agreements about the "subject" of the forbearance and the pledge agreement. (Doc. 1-10 at 14 and 25) But the forbearance agreement acknowledges that the earlier agreements "continue in full force and effect and remain unaffected and unchanged except as expressly and specifically modified by [the forbearance agreement]."

"A new contract will supersede a previous contract only where the parties intend that it do so." *L. v. Everglades Coll., Inc.*, 2021 WL 4950244, at *2 (M.D. Fla. 2021) (Barber, J.) (citing *Pinnacle Holding, Inc. v. Biologics, Inc.*, 643 So. 2d 642 (Fla. 2d DCA 1994)). To show that a later agreement superseded an agreement containing an arbitration provision, the party attempting to avoid the arbitration provision must establish that a later agreement either "expressly or by clear implication" negated the arbitration agreement. *Navarette v. Silversea Cruises Ltd.*, 2014 WL 11444105, at *3 (S.D. Fla. 2014) (Huck, J.), *aff'd*, 620 Fed. Appx. 793 (11th Cir. 2015). Although the forbearance agreement and the pledge agreement purport to supersede other agreements, the forbearance agreement confirms that the earlier

agreements continue "in full force and effect" unless expressly changed.[3] And the parties' agreeing to venue in Manatee County, Florida, is not an express change to the earlier arbitration agreements.[4]

## CONCLUSION

For these reasons and others stated by the defendants, the motion (Doc. 10) to compel this action to arbitration is **GRANTED**. Under the Federal Arbitration Act, 9 U.S.C. § 3, this action is **STAYED** pending the resolution of arbitration. Before the parties submit the action to arbitration, the arbitration agreement requires the parties to submit to mediation "any controversy or claim." (Doc. 1-1 at 11; Doc. 1-2 at 8) Within **FOURTEEN DAYS** after this order, the parties must mediate, unless the parties propose an agreed but later day on which to mediate. The clerk is directed to **ADMINISTRATIVELY CLOSE** the case and terminate any pending motion. No later than seven days after the parties' receipt of the arbitral decision, the prevailing party must file a notice announcing the decision.

ORDERED in Tampa, Florida, on November 10, 2023.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[3] The forbearance agreement expressly confirms that the agreement is not a novation of the earlier agreements.

[4] If the forbearance agreement and the pledge agreement had modified the earlier agreements, this action would warrant dismissal to permit the action to begin in "the County or Circuit Court of Manatee County, Florida[.]" (Doc. 1-10 at 13)

# EXHIBIT E

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>WORKCENTRIC, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. 24-10040 (MFW)<br><br>**Related Docket Nos. Nos. 17, 34, 40, 84, 89, 92** |

**CERTIFICATION OF COUNSEL REGARDING ORDER GRANTING EMERGENCY MOTION OF WORKCENTRIC 1, LLC, TO STRIKE MOTION TO DISMISS INVOLUNTARY PETITION FILED BY PURPORTED ALLEGED DEBTOR**

I, Mark L. Desgrosseilliers, counsel to WorkCentric 1, LLC, ("**WorkCentric 1**"), in its role as sole manager for WorkCentric, LLC, and on behalf of WorkCentric, LLC, the alleged debtor (the "**Alleged Debtor**"), hereby certify as follows:

1. On February 16, 2024, WorkCentric I filed the *Emergency Motion of WorkCentric 1, LLC, to Strike Motion to Dismiss Involuntary Petition Filed by Purported Alleged Debtor* (Docket No. 34) (the "**Motion**").

2. On February 21, 2024, WorkCentric, LLC filed a *Preliminary Objection of WorkCentric, LLC to Emergency Motion of WorkCentric 1, LLC to Strike Motion to Dismiss Involuntary Petition Filed by Purported Alleged Debtor and Request for Emergency Determination of Issues Raised Therein, and Request for Scheduling Order Relating to Adjudication of Threshold Corporate Authority Issues* (Docket No. 40); and on March 12, 2024 a S*upplemental Objection of WorkCentric LLC to Emergency Motion of WorkCentric I, LLC to Strike Motion to Dismiss Involuntary Petition Filed by Purported Alleged Debtor, and Cross-Motion to Strike WorkCentric 1, LLC Filings Purportedly on Behalf of WorkCentric, LLC* (Docket No 84) (collectively, the "**Objections**").

3. On March 26, 2024, this Court held a hearing (the "**Hearing**") to consider the relief sought in the Motion and the Objections. Counsel for the Manager, counsel for Sunz, counsel for the United States Trustee, and counsel for Former Management met and conferred in an attempt to submit an agreed form of order for the Court's consideration. Those efforts were unsuccessful.

4. Accordingly, Attached as **Exhibit A** is a revised form of order (the "**WC1 Proposed Order**") proposed by the Manager. The WC1 Proposed Order has been circulated to counsel for Sunz, counsel for the United States Trustee, and counsel for the Former Managers. The United States Trustee takes no position with respect to the WC1 Proposed Order. Former Management opposes entry of the WC1 Proposed Order.

5. A blackline comparison of the WC1 Proposed Order against the order filed with the Motion is attached hereto as **Exhibit B**.

6. Attached as **Exhibit C** is a form of order (the "**Former Management's Proposed Order**"). The Former Management's Proposed Order has also been circulated to counsel for Sunz, counsel for the United States Trustee, and counsel for the Manager (WorkCentric 1, LLC). The United States Trustee takes no position with respect to the Former Management's Proposed Order. WorkCentric 1, LLC, opposes entry of the Former Management's Proposed Order.

7. Attached hereto as **Exhibit D** is a blackline comparison of the Former Management's Proposed Order against the WC1 Proposed Order.

The parties are available at the Court's convenience, if the Court has any questions or concerns with respect to the forms of proposed order filed herewith.

Dated: March 29, 2024
Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ Mark L. Desgrosseilliers*
Mark L. Desgrosseilliers (No. 4083)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0191
Email: desgross@chipmanbrown.com

*Counsel for WorkCentric 1, LLC, in its role as sole manager for WorkCentric, LLC, and on behalf of WorkCentric, LLC, the Alleged Debtor*

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| WORKCENTRIC LLC, | Case No. 24-10040 (MFW) |
| Alleged Debtor. | **Related Docket Nos. 17, 40, 84, 89, 92** |

**ORDER STRIKING UNAUTHORIZED MOTION TO DISMISS AND GRANTING FURTHER RELIEF**

This matter came before the Court for hearing on March 26, 2024 at 10:00 a.m. (the "**Hearing**") upon the: (i) Emergency Motion of WorkCentric 1, LLC, to Strike Motion to Dismiss Involuntary Petition Filed by Purported Alleged Debtor (the "**Motion**"; Doc. No. 34))[1] filed by the Manager (WorkCentric 1, LLC), on its own behalf and on behalf of the Alleged Debtor, seeking to strike the Unauthorized Motion to Dismiss filed by the Alleged Debtor's former manager; (ii) the Alleged Debtor's former manager's Preliminary Objection of WorkCentric, LLC to Emergency Motion of WorkCentric 1, LLC to Strike Motion to Dismiss Involuntary Petition Filed by Purported Alleged Debtor and Request for Emergency Determination of Issues Raised Therein, and Request for Scheduling Order Relating to Adjudication of Threshold Corporate Authority Issues" (Doc. No. 40) and the Supplemental Objection of WorkCentric LLC to Emergency Motion of WorkCentric 1, LLC to Strike Motion to Dismiss Involuntary Petition Filed by Purported Alleged Debtor and Cross-Motion to Strike WorkCentric 1, LLC Filings Purportedly on Behalf of WorkCentric, LLC (Doc. No. 84 and, with Doc No. 40 together, the "**Objections and Cross Motion**"), (iii) the Objection of WorkCentric 1, LLC, to Motion of Former Management to Stay

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Case 24-10040-MFW Doc 120-1 Filed 10/29/24 Page 3 of 41

Discovery and Reply of WorkCentric 1, LLC, to Preliminary and Supplemental Objections of Former Management to Emergency Motion of WorkCentric 1, LLC, to Strike Motion to Dismiss Involuntary Petition Filed Against Purported Alleged Debtor (the "**Manager Reply**") (Doc. 89) and (iv) SUNZ Insurance Solutions, LLC's Response Regarding Former Managers' (I) Preliminary and Supplemental Objections to WorkCentric 1, LLC's Motion to Strike, and (II) Cross-Motion to Strike" (the "**Response**") (Doc. No. 92). The Court having reviewed the Motion, the Objections and Cross Motion, the Manager Reply, the Response, and certain exhibits as articulated on the record of the Hearing and having heard the argument of counsel for all parties at the Hearing, and, for the reasons stated by the Court on the record of the Hearing, the Court hereby FINDS that

A. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334;

B. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2);

C. Notice of the Motion and the Hearing was sufficient and proper and no other or further notice is necessary;

D. The legal and factual bases set forth in the Motion and Response establish just cause for the relief granted herein;

E. David Harvey and Docks Sutherland are not authorized to manage the Alleged Debtor effective as of November 18, 2023; and

F. WorkCentric I, LLC is the manager of the Alleged Debtor authorized to manage the Alleged Debtor effective as of November 18, 2023; and, after due deliberation thereon and good and sufficient cause appearing therefore, it is hereby

**ORDERED, ADJUDGED, AND DECREED** that:

1. The Motion is **GRANTED** and the Objections and Cross-Motion are **OVERRULED and DENIED,** for the reasons set forth by the Court at the Hearing, including the Court's factual findings as stated on the record.

2. The Motion to Dismiss Involuntary Petition (Doc. 17) is stricken.

3. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

4. The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>WORKCENTRIC LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. 24-10040 (MFW)<br><br>**Related Docket Nos. 17, — 40, 84, 89, 92** |

**ORDER ~~GRANTING EMERGENCY~~STRIKING UNAUTHORIZED MOTION ~~OF WORKCENTRIC 1, LLC, TO STRIKE MOTION~~ TO DISMISS ~~INVOLUNTARY PETITION FILED BY PURPORTED ALLEGED DEBTOR~~ AND GRANTING FURTHER RELIEF**

~~The Court having considered the emergency motion (the "**Motion**")[1]~~

This matter came before the Court for hearing on March 26, 2024 at 10:00 a.m. (the "**Hearing**") upon the: (i) Emergency Motion of WorkCentric 1, LLC, to Strike Motion to Dismiss Involuntary Petition Filed by Purported Alleged Debtor (the "**Motion**"; Doc. No. 34))[1] ~~of the Manager, on its own behalf and on behalf of the Alleged Debtor, to Strike Motion to Dismiss Involuntary Petition filed by Purported Alleged Debtor; and the Court finding that (a) the~~filed by the Manager (WorkCentric 1, LLC), on its own behalf and on behalf of the Alleged Debtor, seeking to strike the Unauthorized Motion to Dismiss filed by the Alleged Debtor's former manager; (ii) the Alleged Debtor's former manager's Preliminary Objection of WorkCentric, LLC to Emergency Motion of WorkCentric 1, LLC to Strike Motion to Dismiss Involuntary Petition Filed by Purported Alleged Debtor and Request for Emergency Determination of Issues Raised Therein, and Request for Scheduling Order Relating to Adjudication of Threshold Corporate Authority Issues" (Doc. No. 40) and the Supplemental

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Objection of WorkCentric LLC to Emergency Motion of WorkCentric 1, LLC to Strike Motion to Dismiss Involuntary Petition Filed by Purported Alleged Debtor and Cross-Motion to Strike WorkCentric 1, LLC Filings Purportedly on Behalf of WorkCentric, LLC (Doc. No. 84 and, with Doc No. 40 together, the "**Objections and Cross Motion**"), (iii) the Objection of WorkCentric 1, LLC, to Motion of Former Management to Stay Discovery and Reply of WorkCentric 1, LLC, to Preliminary and Supplemental Objections of Former Management to Emergency Motion of WorkCentric 1, LLC, to Strike Motion to Dismiss Involuntary Petition Filed Against Purported Alleged Debtor (the "**Manager Reply**") (Doc. 89) and (iv) SUNZ Insurance Solutions, LLC's Response Regarding Former Managers' (I) Preliminary and Supplemental Objections to WorkCentric 1, LLC's Motion to Strike, and (II) Cross-Motion to Strike" (the "**Response**") (Doc. No. 92). The Court having reviewed the Motion, the Objections and Cross Motion, the Manager Reply, the Response, and certain exhibits as articulated on the record of the Hearing and having heard the argument of counsel for all parties at the Hearing, and, for the reasons stated by the Court on the record of the Hearing, the Court hereby FINDS that

A. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334;~~ (b) this~~

B. This is a core proceeding pursuant to ~~pursuant to~~ 28 U.S.C. § 157(b)(2);~~ (c) notice~~

C. Notice of the Motion and the ~~hearing with respect to the Motion~~Hearing was sufficient and proper and no other or further notice is necessary;~~ and (d) the~~

D. The legal and factual bases set forth in the Motion and Response establish just cause for the relief granted herein;~~ and~~

E. David Harvey and Docks Sutherland are not authorized to manage the Alleged Debtor effective as of November 18, 2023; and

F. WorkCentric I, LLC is the manager of the Alleged Debtor authorized to manage the Alleged Debtor effective as of November 18, 2023; and, after due deliberation thereon~~;~~ and good and sufficient cause appearing therefore, it is hereby

**ORDERED, ADJUDGED, AND DECREED** that:

1. The Motion is **GRANTED** and the Objections and Cross-Motion are **OVERRULED and DENIED,** for the reasons set forth by the Court at the Hearing, including the Court's factual findings as stated on the record.

2. The ~~Unauthorized~~ Motion to ~~Dismissed~~Dismiss Involuntary Petition (Doc. 17) is stricken.

3. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

4. The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Document comparison by Workshare Compare on Friday, March 29, 2024 3:03:04 PM

| **Input:** | |
|---|---|
| Document 1 ID | netdocuments://4891-2768-4774/1 |
| Description | Workcentric - Order Granting Motion to Strike |
| Document 2 ID | netdocuments://4891-2768-4774/5 |
| Description | Workcentric - Order Granting Motion to Strike |
| Rendering set | Standard |

| **Legend:** | |
|---|---|
| Insertion | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| **Statistics:** | |
|---|---|
| | Count |
| Insertions | 26 |
| Deletions | 17 |
| Moved from | 0 |
| Moved to | 0 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 43 |

# EXHIBIT C

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| WORKCENTRIC LLC, | Case No. 24-10040 (MFW) |
| Alleged Debtor. | **Related Docket Nos. 17, 40, 84, 89, 92** |

**ORDER STRIKING UNAUTHORIZED MOTION TO DISMISS AND GRANTING FURTHER RELIEF**

This matter came before the Court for hearing on March 26, 2024 at 10:00 a.m. (the "**Hearing**") upon the: (i) Emergency Motion of WorkCentric 1, LLC, to Strike Motion to Dismiss Involuntary Petition Filed by Purported Alleged Debtor (the “**Motion**”; Doc. No. 34))[1] filed by the WorkCentric 1, LLC (WC-1), on its own behalf and on behalf of the Alleged Debtor, seeking to strike the Motion to Dismiss filed by the Alleged Debtor's former manager; (ii) the Alleged Debtor’s former manager's Preliminary Objection of WorkCentric, LLC to Emergency Motion of WorkCentric 1, LLC to Strike Motion to Dismiss Involuntary Petition Filed by Purported Alleged Debtor and Request for Emergency Determination of Issues Raised Therein, and Request for Scheduling Order Relating to Adjudication of Threshold Corporate Authority Issues” (Doc. No. 40) and the Supplemental Objection of WorkCentric LLC to Emergency Motion of WorkCentric 1, LLC to Strike Motion to Dismiss Involuntary Petition Filed by Purported Alleged Debtor and Cross-Motion to Strike WorkCentric 1, LLC Filings Purportedly on Behalf of WorkCentric, LLC (Doc. No. 84 and, with Doc No. 40 together, the “**Objections and Cross Motion**”), (iii) the Objection of WorkCentric 1, LLC, to Motion of Former Management to Stay Discovery and Reply

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

of WorkCentric 1, LLC, to Preliminary and Supplemental Objections of Former Management to Emergency Motion of WorkCentric 1, LLC, to Strike Motion to Dismiss Involuntary Petition Filed Against Purported Alleged Debtor (the "**Reply**") (Doc. 89) and (iv) SUNZ Insurance Solutions, LLC's Response Regarding Former Managers' (I) Preliminary and Supplemental Objections to WorkCentric 1, LLC's Motion to Strike, and (II) Cross-Motion to Strike" (the "**Response**") (Doc. No. 92). The Court having reviewed the Motion, the Objections and Cross Motion, the Reply, the Response, and certain exhibits as articulated on the record of the Hearing and having heard the argument of counsel for all parties at the Hearing, and, for the reasons stated by the Court on the record of the Hearing, the Court hereby FINDS that

A. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334;

B. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2);

C. Notice of the Motion and the Hearing was sufficient and proper and no other or further notice is necessary; and

D. After due deliberation thereon and good and sufficient cause appearing therefore, it is hereby

**ORDERED, ADJUDGED, AND DECREED** that:

1. The Motion is **GRANTED** and the Objections and Cross-Motion are **OVERRULED,** for the reasons set forth by the Court at the Hearing.

2. WC-1 has been properly authorized to act for the debtor in this case and is the proper authority to act for the Alleged Debtor in this case; *provided,* however, that notwithstanding anything herein, Sunz Insurance Solutions, LLC ("Sunz"), any of its affiliates, and WorkCentric 1, LLC, shall have no access to any privileged information (including documents or communications with counsel), shall have no control over, and shall not take any steps to

interfere with or otherwise impair, the claims of WorkCentric, LLC asserted against Sunz in that certain arbitration captioned Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, WorkCentric 3, LLC, Topco, LLC and WC Container, LLC v. Sunz Insurance Solutions, LLC and Sunz Insurance Company pending a determination whether to enter an order for relief concerning the petition filed in this case.

3. The terms and conditions of this Order shall be effective and enforceable within ten days upon its entry.

4. The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

# EXHIBIT D

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>WORKCENTRIC LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. 24-10040 (MFW)<br><br>**Related Docket Nos. 17, 40, 84, 89, 92** |

**ORDER STRIKING UNAUTHORIZED MOTION TO DISMISS AND GRANTING FURTHER RELIEF**

This matter came before the Court for hearing on March 26, 2024 at 10:00 a.m. (the "**Hearing**") upon the: (i) Emergency Motion of WorkCentric 1, LLC, to Strike Motion to Dismiss Involuntary Petition Filed by Purported Alleged Debtor (the "**Motion**"; Doc. No. 34))[1] filed by the ~~Manager (~~WorkCentric 1, LLC (WC-1), on its own behalf and on behalf of the Alleged Debtor, seeking to strike the ~~Unauthorized~~ Motion to Dismiss filed by the Alleged Debtor's former manager; (ii) the Alleged Debtor's- former manager's Preliminary Objection of WorkCentric, LLC to Emergency Motion of WorkCentric 1, LLC to Strike Motion to Dismiss Involuntary Petition Filed by Purported Alleged Debtor and Request for Emergency Determination of Issues Raised Therein, and Request for Scheduling Order Relating to Adjudication of Threshold Corporate Authority Issues" (Doc. No. 40) and— the Supplemental Objection of WorkCentric LLC to Emergency Motion of WorkCentric 1, LLC to Strike Motion to Dismiss Involuntary Petition Filed by Purported Alleged Debtor and Cross-Motion to Strike WorkCentric 1, LLC Filings Purportedly on Behalf of WorkCentric, LLC (Doc. No. 84 and, with Doc No. 40 together, the "**Objections and Cross Motion**"), (iii) the Objection of WorkCentric 1, LLC, to Motion of Former Management to

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Stay Discovery and Reply of WorkCentric 1, LLC, to Preliminary and Supplemental Objections of Former Management to Emergency Motion of WorkCentric 1, LLC, to Strike Motion to Dismiss Involuntary Petition Filed Against Purported Alleged Debtor (the "~~**Manager**~~ **Reply**") (Doc. 89) and (iv) SUNZ Insurance Solutions, LLC's Response Regarding Former Managers' (I) Preliminary and Supplemental Objections to WorkCentric 1, LLC's Motion to Strike, and (II) Cross-Motion to Strike" (the "**Response**") (Doc. No. 92). The Court having reviewed the Motion, the Objections and Cross Motion, the ~~Manager~~ Reply, the Response, and certain exhibits as articulated on the record of the Hearing and having heard the argument of counsel for all parties at the Hearing, and, for the reasons stated by the Court on the record of the Hearing, the Court hereby FINDS that

A. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334;

B. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2);

C. Notice of the Motion and the Hearing was sufficient and proper and no other or further notice is necessary; and

~~D. The legal and factual bases set forth in the Motion and Response establish just cause for the relief granted herein;~~

~~E. David Harvey and Docks Sutherland are not authorized to manage the Alleged Debtor effective as of November 18, 2023; and~~

~~F.~~D. ~~WorkCentric I, LLC is the manager of the Alleged Debtor authorized to manage the Alleged Debtor effective as of November 18, 2023;, and, after~~After due deliberation thereon and good and sufficient cause appearing therefore, it is hereby

**ORDERED, ADJUDGED, AND DECREED** that:

1. The Motion is **GRANTED** and the Objections and Cross-Motion are **OVERRULED** ~~**and DENIED**~~**,** for the reasons set forth by the Court at the Hearing~~, including the Court's factual findings as stated on the record~~.

~~2. The Motion to Dismiss Involuntary Petition (Doc. 17) is stricken.~~

2. WC-1 has been properly authorized to act for the debtor in this case and is the proper authority to act for the Alleged Debtor in this case; *provided,* however, that notwithstanding anything herein, Sunz Insurance Solutions, LLC ("Sunz"), any of its affiliates, and WorkCentric 1, LLC, shall have no access to any privileged information (including documents or communications with counsel), shall have no control over, and shall not take any steps to interfere with or otherwise impair, the claims of WorkCentric, LLC asserted against Sunz in that certain arbitration captioned Embraceor, LLC, WorkCentric, LLC, WorkCentric 2, LLC, WorkCentric 3, LLC, Topco, LLC and WC Container, LLC v. Sunz Insurance Solutions, LLC and Sunz Insurance Company pending a determination whether to enter an order for relief concerning the petition filed in this case."

3. The terms and conditions of this Order shall be ~~immediately~~ effective and enforceable within ten days upon its entry.

4. The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.